[No. 59002-2-I. Division One. August 27, 2007.]

MT DEVELOPMENT, LLC, ET AL., *Appellants*, v. THE CITY OF RENTON, *Respondent*.

---

[31] RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.14(2)(b).

[32] *Dickson v. Kates*, 132 Wn. App. 724, 737, 133 P.3d 498 (2006).

*William H. Williamson* (of *Williamson Law Office*) and *Eric R. Hultman* (of *Hultman Law Office*), for appellants.

*Zanetta L. Fontes* (of *Warren Barber & Fontes, PS*), for respondent.

¶1 ELLINGTON, J. — Where a municipality is the exclusive provider of sewer service to property outside its borders, it may not refuse to provide that service, although it may impose reasonable and lawful conditions before doing so. Reasonable and lawful conditions do not include mandatory compliance with the residential density limits in the municipality's comprehensive land use plan, even where the proposed service location is within the municipality's po-

tential annexation area. Such a requirement amounts to zoning, and a municipality may not zone property outside its borders. We reverse and remand.

## BACKGROUND

¶2 MT Development owns three parcels of land covering almost four acres in the urban growth area of unincorporated King County. County zoning allows eight dwellings per acre.

¶3 The city of Renton is the provider of sewer service for the property. Any plat application filed with the county must be accompanied by a certificate of sewer availability. The property lies within the city's potential annexation area. The city's comprehensive plan designates the property for low density development of four dwellings per acre.

¶4 A previous owner of the property applied for a certificate of sewer availability for one parcel, which the city granted "subject to annexation to the city and following city zoning and land use requirements." Clerk's Papers at 712. The previous owner agreed to these conditions, and the certificate was granted. The owner also petitioned for annexation of the remaining two parcels.

¶5 The city subsequently amended its municipal code to require adherence to the city's comprehensive plan as a condition of providing sewer service to properties in its potential annexation area:

> Sewer service to properties outside the City's corporate limits will be permitted when the property is within the City's adopted Potential Annexation Area (PAA), approved sanitary sewer service boundary, or within a special assessment district of the City. *Sanitary sewer service will only be granted to those parcels whose proposed connection(s) meet(s) the following three (3) Renton adopted land use dimensions:*
>
> a. *Use* allowed under adopted general land use category, i.e., residential, commercial, office, or industrial;
>
> b. Allowed residential density within adopted land use category; and

    c. Allowed *structure* type and scale within adopted land use category, i.e., number of residential units per building.

RENTON MUNICIPAL CODE 4-6-040(C)(1) (emphasis added).

¶6 After MT acquired all three parcels, it applied for a certificate of sewer availability for the remaining two. The city denied this application because MT's proposed development called for eight dwellings per acre, which was consistent with county zoning but exceeded the density allowed in the city's land use plan. Thereafter, the county denied MT's plat application for want of a sewer certificate. A few days later, the King County Boundary Review Board approved the city's annexation of the land.

¶7 MT filed this action against the city and the boundary review board, seeking a judgment declaring the city's ordinance unenforceable, a writ of mandamus ordering the city to issue the certificate, and an injunction. The annexation process stopped. The city moved for partial summary judgment upholding the ordinance, and MT filed a cross motion for summary judgment. The court granted the city's motion, denied MT's motion, and dismissed all of MT's claims against the city. By stipulation of the parties, the boundary review board was dismissed.

¶8 We apply the usual standard for review of summary judgment.[1]

*ANALYSIS*

¶9 The question presented is whether the city of Renton may, as a condition of providing sewer service outside its borders, require compliance with its comprehensive plan.

¶10 MT makes the principal arguments that an exclusive provider of sewer service may deny service outside its

---

[1] We review a grant of summary judgment de novo, engaging in the same inquiry as the trial court and viewing the facts and the reasonable inferences from those facts in the light most favorable to the nonmoving party. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 429, 38 P.3d 322 (2002). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c).

borders only for utility-related reasons, such as lack of capacity, and that requiring compliance with the city's comprehensive plan amounts to zoning, which the city may not impose on property beyond its borders. MT also seeks remand to develop a record on its claims of regulatory takings and violation of due process.

■ ¶11 The city responds that it is not the exclusive provider and that, in any case, it is allowed by statute to place conditions upon provision of sewer service outside its borders, that those conditions need not be directly related to its capacity to provide service, and that requiring compliance with city "land use dimensions" (usage, density, and structure) as a condition of service does not amount to zoning.[2] The city also seeks sanctions on grounds that MT failed to raise the issues of takings and substantive due process below.

■ ■ ¶12 RCW 35.67.310 authorizes cities to provide sewer connections to property outside city limits. There is no duty to provide such service, however, unless the city holds itself out as willing to supply the service or is the exclusive supplier of service in the region. *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 381-82, 858 P.2d 245 (1993).

¶13 As a threshold matter, the city contends it is not the exclusive supplier of sewer service to MT's parcels because "septic might be available." Clerk's Papers at 727. But King County authorizes septic systems in its urban growth area only on a limited, temporary basis.[3] The limited, temporary availability of septic systems in fact supports MT's argument that the city is the exclusive provider of sewer service,

[2] The city also contends that MT's claims are barred because MT failed to exhaust its administrative remedies by seeking an amendment to the city's comprehensive plan. But MT seeks a declaration that the plan does not apply to its property. This remedy is not administrative in nature, and exhaustion is not required. *S. Hollywood Hills Citizens Ass'n for Pres. of Neighborhood Safety & Env't v. King County*, 101 Wn.2d 68, 73, 677 P.2d 114 (1984).

[3] KING COUNTY CODE 13.24.035(A) ("All development within the urban growth area shall be served by public sewer service except on-site sewage systems may be allowed temporarily in some parts of the urban growth area.").

and the city offers no evidence to the contrary. The city is the exclusive provider and has a duty to provide service to these parcels.

¶14 An exclusive provider of sewer service may impose reasonable conditions upon its agreement to provide the service, and contrary to MT's contention, these conditions are not limited to those relating to the capacity of the utility to provide such service. In *Yakima County*, the city was both the exclusive provider and held itself out as willing to provide sewer service. *Yakima County*, 122 Wn.2d at 382. Nonetheless, the court held that the city of Yakima could require property owners outside its borders to agree to annexation as a condition of receiving service. *Id.* Annexation is not a capacity-related condition.

¶15 Municipalities may not, however, impose conditions that are unreasonable or otherwise unlawful. In *Yakima County*, a further condition that property owners *promote* annexation was held improper because it effectively required an unknowing waiver of First Amendment speech rights. *Id.* at 395. In *Nolte v. City of Olympia*, 96 Wn. App. 944, 952-53, 955, 982 P.2d 659 (1999), a condition requiring payment of impact fees was held unlawful because the assessment violated other provisions of state law.

¶16 MT's chief contention is that the city's ordinance is unlawful because it imposes zoning regulations beyond city borders. Zoning is an exercise of police power that regulates the use of property. *First Covenant Church of Seattle v. City of Seattle*, 120 Wn.2d 203, 222, 840 P.2d 174 (1992). Under the Washington Constitution, "Any county, city, town or township may make and enforce *within its limits* all such local police, sanitary and other regulations as are not in conflict with general laws." WASH. CONST. art. XI, § 11 (emphasis added).

¶17 The city contends it has done no more than comply with the Growth Management Act, chapter 36.70A RCW, which mandates that cities accommodate anticipated urban growth in their comprehensive plans. We presume the city relies upon the following provision of the act:

[T]he county and each city within the county shall include [in their comprehensive plans urban growth] areas and densities sufficient to permit the urban growth that is projected to occur in the county or city for the succeeding twenty-year period . . . .

Each urban growth area shall permit urban densities and shall include greenbelt and open space areas. . . . An urban growth area . . . shall permit a range of urban densities and uses. . . . Cities and counties have discretion in their comprehensive plans to make many choices about accommodating growth.

. . . .

An urban growth area designated in accordance with this section may include within its boundaries urban service areas or potential annexation areas designated for specific cities or towns within the county.

RCW 36.70A.110(2), (7). A comprehensive plan provides an "overall guide for development." *Cougar Mountain Assocs. v. King County*, 111 Wn.2d 742, 756, 765 P.2d 264 (1988). The city claims that it has merely planned for urban growth by establishing land use designations for its potential annexation area, and that no actual zoning occurs until annexation is complete.

¶18 This argument ignores the effect of the condition. " 'The heart of a typical zoning ordinance defines the various districts and the regulations of use, lot size, site coverage, density, height, landscaping, parking, signs and other matters.' " *Id.* (quoting RICHARD SETTLE, WASHINGTON LAND USE AND ENVIRONMENTAL LAW AND PRACTICE § 2.3(a) (1983)). The city's sewer service ordinance does not merely implement the Growth Management Act's planning requirements. It imposes immediate use, density, and structure requirements upon property outside the city's boundaries as a condition of receiving a necessary service available only from the city. The ordinance thus regulates use of the property and has the effect of zoning. Because the city's zoning authority ends at its borders, the requirement that applicants for sewer service outside city limits must comply with the city's "land use

dimensions" is unlawful.[4] The trial court erred in failing to grant a writ ordering the city to issue a certificate of sewer availability. We remand for issuance of the writ.

¶19 MT argues that whatever decision we reach as to the lawfulness of the service condition, remand is required to determine whether the condition is a regulatory taking or violation of substantive due process. The city seeks an award of sanctions for violation of RAP 2.5, contending that MT failed to raise these issues below.

¶20 There is no basis for sanctions here. In its petition for constitutional and statutory writs of review, MT alleged, among other things, takings and violation of substantive due process. The city's motion for partial summary judgment addressed the validity of the municipal ordinance and issues of ripeness and estoppel.[5] No rule requires parties to incorporate argument upon every claim in the lawsuit where a motion focuses upon certain specific claims, and MT did not waive its other claims simply by filing a cross motion seeking a declaration that the service condition was unlawful. The takings and due process claims were asserted below, and no opportunity for argument thereon ever arose. The issues were raised but never joined and should not have been dismissed.

¶21 We reverse and remand for further proceedings consistent with this opinion.

AGID and DWYER, JJ., concur.

---

[4] We do not address whether density limitations related to capacity could be lawful.

[5] The city asserts that because MT filed a cross motion for summary judgment, it acknowledged there was no need for a trial. MT's motion addressed whether MT had a vested right to a sewer certificate, whether the city had the authority to condition service based on planned land use densities or zoning that would occur after annexation, and whether the city was estopped from refusing to issue the certificate. A favorable ruling on those issues would be a predicate for trial on the other claims.