209 P.3d 534 (2009)
Michael STANZEL, Respondent,
Pierce County, a political subdivision, Respondent,
v.
CITY OF PUYALLUP, a municipal corporation, Appellant.
No. 37697-1-II.
Court of Appeals of Washington, Division 2.
June 16, 2009.
*535 Kevin John Yamamoto, City of Puyallup, Puyallup, WA, for Appellant.
David Brian St. Pierre, Pierce County Office of Prosecuting AttorneyCivil, Tacoma, WA, J. Richard Aramburu, Aramburu & Eustis LLP, Seattle, WA, for Respondents.
BRIDGEWATER, P.J.
¶ 1 The city of Puyallup (City) appeals the Pierce County Superior Court's denial of its motion to dismiss Michael Stanzel's land-use petition for failure to first exhaust his administrative remedies. The City further challenges the Pierce County Superior Court's determination that the Pierce County hearing examiner had authority to order the City to provide water service and a water service availability letter to Stanzel. We affirm.

FACTS
¶ 2 Stanzel owns real property at 6224 114th Avenue Court East in Pierce County, Washington, that he calls the "church property." VRP (June 20, 2007) at 31. The church property contains a church building, paintball fields, and a shed; it is zoned by the County as mixed use development or M.U.D. VRP (June 20, 2007) at 32, 56. Stanzel receives water service for the church property from the City because it sits within the City's water distribution zone although it is outside the City's corporate limits. The City classifies the service it provides to Stanzel as residential water service.
¶ 3 Stanzel sought to bring the church building up to code so that he could use it for church services. He also intended to add a game room and to add restrooms to the facilities.[1] In addition, Stanzel sought to upgrade the drain field on the property. Stanzel hired an engineer and submitted designs to the Pierce County Department of Health. Pierce County did not act on the submitted designs and related permit requests because Stanzel failed to provide Pierce County with a water availability letter from the City.
¶ 4 Stanzel went to the City's utilities department and asked for a commercial water availability letter. Stanzel brought with him a June 25, 2004 letter, describing his request. He delivered the letter along with the County's water availability form and presented it to city employee Colleen Harris. Harris informed Stanzel that the. City was no longer providing water availability letters for property outside its city limits. Harris asked Stanzel what he planned to do with the property and he told her that it was really none of her business. Harris informed Stanzel that if he changed the property use from residential to commercial, the City would cut off his water service. Harris attempted to slide the letter back to Stanzel, stating that she would not accept it. Stanzel left the letter sitting on the counter in front of Harris.
¶ 5 On January 6, Stanzel returned to the utilities department and asked the City to stamp another letter because the City had not responded to his first letter. In response, Harris mailed Stanzel a copy of the Puyallup Municipal Code. Stanzel noted that the City had changed its code requirements, which now stated that the City would not provide fire flow or water availability letters unless there was an active annexation in the area and the property owner agreed to annexation. Stanzel testified that the property owners in the area, including the church property, had addressed the issue of annexation to the City in a recent election, ultimately deciding against annexation. Stanzel did not want to annex to the City.
¶ 6 Stanzel investigated other water service providers, including a water utility in nearby Edgewood. Edgewood informed Stanzel that it did not have distribution lines available to Stanzel's property and that all water service agreements are filed with Pierce County per Washington code. Stanzel considered buying a fire flow tank for the church property, but he quickly discovered that a 90,000 gallon tank would cost over $80,000. In contrast, Stanzel's water costs *536 through the City ranged between $30 and $50 per month.
¶ 7 On August 9, Stanzel wrote another letter to the City again requesting water service, this time directed to Tom Heinecke. Again, the City did not respond.
¶ 8 Stanzel brought a motion before the Pierce County hearing examiner as a part of a separate case involving one of Stanzel's neighboring properties, a company named Plexus Investments, LLC, seeking an order that would compel the City to provide him with commercial water service and an availability letter. Over the City's jurisdictional objections, the hearing examiner heard Stanzel's case while acknowledging that Stanzel did not go through the City's normal dispute resolution process. The hearing examiner based the decision to hear Stanzel's motion on the hearing examiner's decision in the Plexus hearing, where the hearing examiner ruled that the Pierce County Code allowed property owners outside of the city limits to go directly to the hearing examiner to resolve disputes.
¶ 9 The hearing examiner heard Stanzel's motion to compel, ultimately determining that the City's preannexation requirement was unreasonable but denying Stanzel's request because the hearing examiner lacked authority to compel the City to provide service. The hearing examiner noted that if he had authority, he would compel the City to provide service to Stanzel under these specific facts. But, the hearing examiner allowed Stanzel to seek alternative sources for water and/or to be removed from the City's service area if desired.
¶ 10 On August 17, 2007, Stanzel filed a petition for judicial review under the Land Use Petition Act (LUPA), chapter 36.70C RCW, in superior court, requesting that the trial court direct the hearing examiner to compel the City to provide his requested water service and related availability letter. The City moved to dismiss Stanzel's petition, arguing that he failed to exhaust his administrative remedies and therefore lacked standing. Specifically, the City claimed that Stanzel failed to submit an application to the City, failed to pay the City's application fee, failed to submit to a review and approval process before the city council, and failed to seek redress from the City's hearing examiner. The trial court denied the City's motion to dismiss. The trial court reasoned that the Puyallup Municipal Code should be strictly construed and accordingly, applied only to new connections or extensions. Otherwise, the trial court reasoned, Stanzel would have to start from scratch with the City.
¶ 11 Ultimately, the trial court granted Stanzel's petition and reversed the hearing examiner, ruling that the hearing examiner did have statutory authority to compel the City to provide water service to Stanzel's church property based on the facts of this case. The trial court conditioned its decision on Stanzel meeting the "usual permitting and informational requirements of any applicant for comparable water service within the City." CP at 119. The trial court also required that Stanzel cooperate and supply detailed plans for his intended project to the City. The City appeals.

ANALYSIS

I. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES
¶ 12 The City contends that the trial court erred when it denied the City's motion to dismiss Stanzel's LUPA petition for failure to exhaust administrative remedies. Under LUPA, we stand "`in the shoes of the superior court'" and limit our review to the hearing examiner's record. Abbey Rd. Group, LLC v. City of Bonney Lake, 141 Wash.App. 184, 192, 167 P.3d 1213 (2007) (quoting Pavlina v. City of Vancouver, 122 Wash.App. 520, 525, 94 P.3d 366 (2004)), review granted, 163 Wash.2d 1045, 187 P.3d 750 (2008). Exhaustion of administrative remedies is a prerequisite to obtaining a decision that qualifies as a decision reviewable under LUPA. Ward v. Bd. of County Comm'rs, Skagit County, 86 Wash.App. 266, 271, 936 P.2d 42 (1997).
¶ 13 According to the City, Stanzel failed to follow several of its application procedures for water and sewer connections or extensions outside its city limits. First, it contends that Stanzel failed to submit an application *537 to the City for water service. The Puyallup Municipal Code (PMC) provides:
(1) Each applicant for service shall be required to sign, on a form provided by the city, an application which shall set forth:
(a) Date of application;
(b) Name and social security number of applicant;
(c) Location of premises to be served;
(d) Size and location of water service;
(e) Date applicant will be ready for service;
(f) Whether the premises have been heretofore supplied with water by the city or its predecessors;
(g) Purposes for which water service is to be used, including the number of dwelling units, if any, being served;
(h) Address to which bills are to be mailed or delivered;
(i) Whether the applicant is the owner or tenant of, or agent for the premises and if tenant, the name of the property owner;
(j) Such information as the city may reasonably require.
PMC 14.02.150.
¶ 14 The administrative record here contains the June 25, 2004 letter that Stanzel left on the counter at the City utilities office. The letter indicates that it was delivered along with Pierce County's required water availability form. The June 25, 2004 letter is not signed, is not a form the City provided, does not contain Stanzel's social security number, does not include the size and location of water service, does not inform the City as to when Stanzel would be ready for such service, does not include the purpose for which Stanzel would use the water, does not include the number of buildings to be served, and does not indicate the address to which bills should be mailed or delivered.
¶ 15 The record also contains Stanzel's follow-up letter, dated January 6, 2005, for which the City asserts similar deficiencies. The January 6, 2005 letter is not a form the City provided, it does not contain Stanzel's social security number, it lacks the size and location of water service, it does not indicate the purpose for which Stanzel would use the water, it does not contain the number of dwellings to be served, and it does not indicate where the City should mail or deliver the bills.
¶ 16 The City states that Stanzel did not otherwise supply the information that PMC 14.02.150(1) required, especially information concerning the purpose of the requested water. It cites to Stanzel's interaction with Harris, where he responded to Harris's inquiry about the change of use on his property by saying, "[I]t was really none of their business, [he] just needed a commercial Water Availability Letter." VRP (June 20, 2007) at 43.
¶ 17 The City next faults Stanzel for failing to pay the application fee and for failing to participate in a pre-application conference with the City. Former PMC 14.22.011 (2004) provides:
14.22.011 Pre-application conference and application fee.
Prior to the acceptance of an application by the city, applicants shall participate in a pre-application conference for the purpose of establishing the application fee. The purpose of the application fee is to ensure the recovery of city costs and expenses associated with the review of the application and drafting or preparing any utility extension agreement, including but not limited to actual costs of city staff time and resources as well as any outside consultation expenses which the city reasonably determines are necessary to adequately review, prepare and analyze the application and any proposed extension agreement. The application fee shall be a minimum of $2,500 with additional charges due depending upon estimated reasonable city costs and expenditures in review of the application. Disputes in the fee amount charged by the city shall be resolved by appeal to the hearing examiner. All applicants shall deposit the application fee with the city before the application will be processed.
Former PMC 14.22.011[2]; Administrative Record (AR) at 79-80. It is undisputed that *538 Stanzel did not participate in such a pre-application conference and did not pay any such application fee.
¶ 18 Next, the City faults Stanzel for failing to present an application for review to the city council and for failing to obtain the council's approval for commercial water service. Former PMC 14.22.010 (2004) provides:
14.22.010 City council approval required.
It shall be the policy of the city of Puyallup that all applicants for the extension/connection of water or sewer service outside the corporate limits of the city of Puyallup shall be subject to review and require approval by the city council prior to the issuance of a permit for the extension/connection of water or sewer service... Applicants must demonstrate that they have initiated or are part of an ongoing annexation process which would bring the property that is subject to a utility extension/connection application into the Puyallup city limits. In its review, the city council may consider the following: impact on the water or sewer system usage; annexation considerations; compliance with the City of Puyallup's comprehensive plan and the City of Puyallup development standards; and any other considerations deemed appropriate by the city council.... The decision of the city council shall be a discretionary, legislative act. If approval is granted by the city council, it shall be in the form of a utility extension agreement approved by the city attorney.
Former PMC 14.22.010[3]; AR at 79. Again, it is undisputed that Stanzel did not meet with the city council, and he certainly did not receive the council's approval.
¶ 19 Finally, the City faults Stanzel for failing to seek a hearing before the City's own hearing examiner. Specifically, the City contends that the city council was the only entity that had authority to approve or deny an extension or connection of water service to Stanzel. If, it argues, a city official denied service, the PMC provides a remedy, namely, an appeal of that denial to the City's hearing examiner. PMC 2.54.070 provides:
2.54.070 Consideration of land use regulatory cases.
The following cases shall be within the jurisdiction of the examiner under the terms and procedures of this chapter:
...
(13) Appeals of administrative decisions.
PMC 2.54.070. It is undisputed that Stanzel did not appeal the City's denial, if there was one, to the City's hearing examiner.
¶ 20 Essentially, the City's argument is that rather than using the City's resources and remedies, Stanzel ignored the City's procedures, opting instead to appeal directly to the County in hopes that the County would compel the City to provide Stanzel with a water availability letter. Stanzel responds first by addressing whether he fits into the category of property owners subject to the City's application process and then addresses his compliance with exhausting his remedies under the Pierce County Code (PCC). He then contends that the exhaustion of remedies requirement should not apply to him because, even if he had followed the City's process, to do so would prove futile.
¶ 21 Stanzel contends that he falls outside of the City's application requirements because he is not seeking new or extended water service and is, instead, already connected. Specifically, Stanzel contends that PMC 14.22.010 applies only to "all applicants for the extension/connection of water or sewer service outside the corporate limits of the city." PMC 14.22.010. The hearing examiner concluded that Stanzel was already an existing customer and that he was not seeking an extension. We agree.
¶ 22 As additional support for his contention, Stanzel asserts that he was not required to follow the City's application process because he did not intend to make a "material change" in the property's use. Br. of Resp't (Stanzel) at 29. PMC 14.02.150(3) provides:
(3) A customer making any material change in the size, character or extent of the equipment or operations for which the city's service is utilized shall immediately file a new application for additional service. *539 A change in a customer's service which requires the installation of a different or additional meter, when made at the customer's request, shall be made by the city at the customer's expense.
PMC 14, 02.150(3).
¶ 23 Here, the hearing examiner found that Stanzel's intended use for the church property would involve "very limited improvement on the site." AR at 10. Further, the hearing examiner found that "increased water requirements, if any, will be very limited," without "substantial increase in use levels." AR at 10. The substantive testimony before the hearing examiner indicated that Stanzel intended to provide water for fire flow and additional restrooms for his new game room. A memorandum from City employee Tom Heinecke reveals that the City has "existing, relatively new, 8- and 12-inch City of Puyallup water lines" presently serving the area containing Stanzel's property. AR at 165: Accordingly, Stanzel contends that there is no basis to conclude that he did not comply with the City's requirements. Substantial evidence supports the hearing examiner's decision that Stanzel's proposed changes did not constitute an extension and were not material changes in the size, character, or extent of the necessary city services.
¶ 24 Stanzel next addresses the process that he did follow. The exhaustion of remedies doctrine applies "in cases where a claim is originally cognizable by an agency which has clearly defined mechanisms for resolving complaints by aggrieved parties and the administrative remedies can provide the relief sought." Smoke v. City of Seattle, 132 Wash.2d 214, 224, 937 P.2d 186 (1997). The final action under the PCC for resolution of water service disputes is a decision by the Pierce County hearing examiner. PCC 19D.140.090(F)(2).
¶ 25 Here, the hearing examiner acknowledged that Stanzel did not go through the normal dispute resolution process because of the outcome of one of the hearing examiner's earlier cases, Plexus Investments, in which the hearing examiner stated that properties located outside of the City of Puyallup but within Puyallup's exclusive water service provider area, could go directly to the county hearing examiner to resolve their disputes.
¶ 26 The hearing examiner cited PCC 19D.140.090(F)(2), which provides:
Unresolved timely and reasonable service disputes shall be referred by the Lead Agency to the Pierce County Hearing Examiner for final resolution of non land use matters pursuant to Pierce County Code subsection 1.22.080 B.2(k).
PCC 19D.140.090(F)(2).[4]
¶ 27 PCC 19D.140.090(G) provides:
Hearing Examiner Review. Disputes referred to the Hearing Examiner shall be processed according to the provisions of Pierce County Code Chapter 1.22 as a Non Land Use Matter. Decisions by the Hearing Examiner shall be final and conclusive and must be supported by substantial evidence based on the record and the Timely and Reasonable Service Criteria contained in [Coordinated Water System Plan]Appendix C.
PCC 19D.140.090(G). Appendix C of the Coordinated Water System Plan (CWSP) provides:
H. Pre-annexation Agreements.
Pursuant to Pierce County Code 19D.140.100, pre-annexation agreements were not contemplated in the designation of exclusive water service area boundaries by the Water Utility Coordinating Committee at the time of service area boundary designation and furthermore, are not necessary to the provision of timely and reasonable service within a purveyor's exclusive water service area boundary. Therefore, a requirement that a potential customer enter into a pre-annexation agreement as a condition of service may be challenged as unreasonable through the dispute resolution process.
CAR at 185. Further, PCC 19D.140.090(A)(1) provides:

*540 1. Timely and Reasonable Disputes. Any existing or potential customer may apply to the Lead Agency to resolve timely and reasonable service disputes the customer has with the designated purveyor as provided for below. A timely and reasonable dispute shall include only existing or potential customers inside an exclusive water service area boundary and the purveyor designated in the Coordinated Water System Plan to provide service to these customers.
PCC 19D.140.090(A)(1). We agree that the PCC provides a forum for Stanzel to dispute the City's failure to provide him with a water availability letter as a reasonable service dispute.
¶ 28 Finally, Stanzel contends that any further exhaustion of remedies with the City would have been futile. He argues that completing an application and paying a high fee with the City would be futile because the City would still require him to agree to annexation as a precondition. Because of our earlier analysis, we do not address this issue.
¶ 29 In conclusion, Stanzel was not required to exhaust City remedies first; the PCC does not require a preannexation agreement; and thus, the trial court did not err in denying the City's motion to dismiss.

II. HEARING EXAMINER'S AUTHORITY
¶ 30 The City next argues that the trial court erred by ruling that the hearing examiner had authority to compel the City to provide water to Stanzel. The City contends that such power far exceeds the statutory authority that the PCC provides its hearing examiners. The trial court considered Stanzel's LUPA petition under RCW 36.70C.130(1)(b), which provides:
The court may grant relief only if the party seeking relief has carried the burden of establishing that one of the standards set forth in (a) through (f) of this subsection has been met. The standards are:
...
(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise.
RCW 36.70C.130(1)(b).
¶ 31 The City contends that the trial court's ruling failed to provide deference to Pierce County's interpretation of its hearing examiner's authority as well as the hearing examiner's own assessment of his authority, which the City claims is limited to (1) adjusting water service boundaries and (2) imposing reasonable conditions that make a project compatible with its environment, or carry out the goals and policies of the applicable plan. The City begins its argument by discussing the statutory nature of hearing examiners' authority. RCW 36.70.970(1), the City argues, provides hearing examiners only with the power to "hear and decide [only] those issues [the legislative authority] believes should be reviewed and decided by a hearing examiner." RCW 36.70.970(1). The City alleges that the authority to compel a municipality to provide water service or a water availability letter exceeds what RCW 36.70.970(1) permits.
¶ 32 Pierce County's code further defines the authority it provides its hearing examiners. PCC 1.22.080(B) provides its hearing examiners with authority to decide a laundry list of land use and non-land use matters. Section D of the same chapter provides the hearing examiners with
power to attach any reasonable conditions found necessary to make a project compatible with its environment and to carry out the goals and policies of the applicable comprehensive plan, community plan, Shoreline Master Program, or other relevant plan, regulations, Federal or State law, case law or Shorelines Hearing Board decisions.
PCC 1.22.080(D) (emphasis added).
¶ 33 The section of the PCC dealing with Pierce County's Coordinated Water System Plan further clarifies the hearing examiner's authority. PCC 19D.140.090 provides a dispute resolution procedure for disputes involving "interpretation and validity of water service areas and provision of timely and reasonable service." PCC 19D.140.090(A).

*541 1. Timely and Reasonable Disputes. Any existing or potential customer may apply to the Lead Agency to resolve timely and reasonable service disputes the customer has with the designated purveyor as provided for below. A timely and reasonable dispute shall include only existing or potential customers inside an exclusive water service area boundary and the purveyor designated in the Coordinated Water System Plan to provide service to these customers.
PCC 19D.140.090(A)(1). Further:
H. Boundary Line Adjustment Based Upon Determination of Untimely or Unreasonable Service. If the Hearing Examiner finds that a purveyor is unable or unwilling to provide timely or reasonable service within its exclusive water service area boundary, the Hearing Examiner shall readjust the purveyor's boundaries to an area which the purveyor will be able and willing to provide service and/or impose reasonable conditions pursuant to Pierce County Code subsection 1.22.080C.,[[5]] to ensure timely and reasonable service. The Hearing Examiner's determination on readjustment of a water service area boundary and/or imposition of reasonable conditions shall be supported by substantial evidence in the record.
PCC 19.D.140.090(H) (emphasis added).
¶ 34 The City contends that because the hearing examiner's only power is to readjust boundaries or impose reasonable conditions found necessary to make a project compatible with its environment and to carry out the goals and policies of the applicable plan, the hearing examiner lacked any such power to compel it to do anything.
¶ 35 Stanzel counters that appendix C of the CWSP, entered as exhibit 21 before the hearing examiner, provides a nonexclusive list of the elements that the hearing examiner considers when making a timely and reasonable service determination. Appendix C limits issues subject to review as follows:
 Interpretation and application of water utility service area boundaries.
 Proposed schedule for providing service.
 Conditions of service, excluding published rates and fees.
 Annexation provisions imposed as a condition of service, provided existing authorities of City government are not altered by the CWSP, except where a Service area agreement exists between a city and a County, or as are specifically authorized by Chapter 70.116 RCW.
AR at 182. Under the section titled "TIMELY AND REASONABLE SERVICE DETERMINATION CRITERIA," section H addresses pre-annexation agreements as they relate to exclusive water areas. AR at 184-85.
H. Pre-annexation Agreements.
Pursuant to Pierce County Code 19D.140.100, pre-annexation agreements were not contemplated in the designation of exclusive water service area boundaries by the Water Utility Coordinating Committee at the time of service area boundary designation and furthermore, are not necessary to the provision of timely and reasonable service within a purveyor's exclusive water service area boundary. Therefore, a requirement that a potential customer enter into a pre-annexation agreement as a condition of service may be challenged as unreasonable through the dispute resolution process.
CAR at 185.
¶ 36 The City argues in its reply brief that Stanzel is attempting to supplement the record on appeal. Specifically, it argues that the Standard Service Agreement Establishing Water Utility Service Area Boundaries in the record indicates that the City signed an earlier version in 1994. Appendix C cited here is a part of the 2001 version of the CWSP. Accordingly, the City contends that Stanzel cannot show that Puyallup was a signatory to the 2001 version of the CWSP. Per RAP 10.3(c), "[a] reply brief should be limited to a response to the issues in the brief to which the reply brief is directed." Further, "[a]n issue raised and argued for the first time in a reply brief is too late to warrant consideration." Cowiche Canyon *542 Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992) (citing In re Marriage of Sacco, 114 Wash.2d 1, 5, 784 P.2d 1266 (1990)). Because we do not consider issues raised for the first time in a reply brief, we decline to address this issue. Sacco, 114 Wash.2d at 5, 784 P.2d 1266.
¶ 37 The City also cites in its reply brief a different section of the 2001 CWSP that allegedly allows water purveyors to require annexation as a condition of service. We decline to review this argument for the same reasons cited above. Sacco, 114 Wash.2d at 5, 784 P.2d 1266. At no point during the hearing before the hearing examiner or before the trial court did the City present this specific argument and, thus, we do not consider it. Sacco, 114 Wash.2d at 5, 784 P.2d 1266.
¶ 38 It is clear that the PCC anticipated and allowed water customers and potential water customers to challenge the reasonableness of pre-annexation requirements. The question for this court now becomes whether the hearing examiner has authority to provide the remedy that Stanzel sought here, to require the City to provide his property with continued water service.
¶ 39 As established above, requiring new applicants for water service or service extensions outside of the city limits to agree to a pre-annexation agreement is not per se unlawful. Cases such as MT and Yakima County (West Valley) Fire Protection reveal that an exclusive provider of sewer service may impose reasonable conditions on its service agreement, including conditions beyond its capacity to provide service. Yakima County (West Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wash.2d 371, 382-83, 858 P.2d 245 (1993); MT Dev., LLC v. City of Renton, 140 Wash.App. 422, 428, 165 P.3d 427 (2007).
¶ 40 The distinction that the hearing examiner drew in this case was that Stanzel was already an existing water customer and the City was already providing him with residential water service. The hearing examiner found that Stanzel would not require a significant expansion of water service and any increase in use would be very limited. The hearing examiner noted that the City agreed in 1994 to provide water service to an area including this particular property. The hearing examiner noted that the City had correctly argued that a municipality cannot be compelled to provide water outside its corporate limits, but distinguished this case on the fact that the City was already providing him water. Nevertheless, the hearing examiner agreed with the county and city officials that to compel the City to provide water service as an "imposition of reasonable conditions" under PCC 19D.140.190(H) went too far and that he lacked the power to do so.
¶ 41 The trial court was correct. As discussed above, the hearing examiner's authority is statutory. Here, the hearing examiner has authority to readjust boundary lines and
power to attach any reasonable conditions found necessary to make a project compatible with its environment and to carry out the goals and policies of the applicable comprehensive plan, community plan, Shoreline Master Program, or other relevant plan, regulations, Federal or State law, case law or Shorelines Hearing Board decisions.
PCC 1.22.080(D); PCC 19D.140.090(H). The record here supports that Stanzel did not have another viable alternative to receiving the City's water. Stanzel investigated other water service providers, including a water utility in nearby Edgewood. Edgewood informed Stanzel that it did not have distribution lines available to Stanzel's property. Stanzel considered buying a fire flow tank but quickly discovered that a 90,000 gallon tank would cost over $80,000. Stanzel's water costs through the City ranged between $30 and $50 per month. Accordingly, we hold that the hearing examiner, in this fact pattern, had authority to place a reasonable condition on the City such that it would not require Stanzel to sign a pre-annexation agreement to use City water because Stanzel was unable to seek service elsewhere, either by private well or secondary water provider.
¶ 42 Affirmed.
We concur: ARMSTRONG and HUNT, JJ.
NOTES
[1] Stanzel testified that his business is seasonal and that he sought the upgrades primarily so he could have an indoor building during the winter where people could congregate for birthday parties and to eat hamburgers. He needed the commercial water supply to support the increased bathrooms on the property.
[2] The City modified its code in 2008. See Ordinance 2913 § 2 (2008).
[3] The City modified its code in 2008. See Ordinance 2913 § 1 (2008).
[4] PCC 19D.140.080 indicates that this dispute resolution authority is for disputes under the Coordinated Water System Plan (CWSP).
[5] Reference to section C was likely error. It appears that that section D is the applicable citation.