[No. 21654-3-III. Division Three. May 27, 2004.]

STEPHEN K. EUGSTER, ET AL., *Respondents*, v. THE CITY OF SPOKANE, ET AL., *Respondents*, RIVER PARK SQUARE, ET AL., *Petitioners*.

800

802

*Leslie R. Weatherhead, Robert S. Magnuson*, and *Christopher G. Varallo* (of *Witherspoon, Kelley, Davenport & Toole, P.S.*), for petitioners.

*Steven G. Jones, Jeff B. Kray*, and *Deborah K. Espinosa* (of *Marten Law Group*); *Stephen K. Eugster* (of *Eugster Law Offices, P.S.C.*); *Michael F. Connelly, City Attorney*; and *Jerry L. Trunkenbolz* and *Pamela H. Rohr* (of *Trunkenbolz, Rohr, P.L.L.C.*) (*Margery Bronster* of *Bronster, Crabtree & Hoshibata*, of counsel), for respondents.

BROWN, J. — We granted discretionary review to resolve a discovery dispute arising in the River Park Square (RPS) parking garage controversy. On First Amendment grounds, the Spokane Superior Court quashed certain subpoenas duces tecum. The subpoenas were issued by Citizens Realty Company, Lincoln Investment Company of Spokane, River Park Square, L.L.C., and RPS II, L.L.C. (collectively Developer) to third parties C. Paul Sandifur, Jr., Philip Sandifur, Erik Skaggs, Metropolitan Mortgage & Securities Co., Inc., Summit Property Development, Inc., and Metwest Mortgage Services, Inc. (collectively Metropolitan). Additionally, the trial court granted fees and costs to Metropoli-

tan and plaintiffs Stephen K. Eugster and Cheryl L. Rodgers.

We affirm except as to the attorney fees awarded to Mr. Eugster and Ms. Rodgers.

## FACTS

The background facts related to the controversial RPS parking improvements are found in *Eugster v. City of Spokane*, 118 Wn. App. 383, 389-401, 76 P.3d 741 (2003). Relevant here is the Developer's discovery effort in aid of its counterclaim for damages due to alleged interference with its business expectancies and due process violations. The Developer sought discovery from the City, former Mayor John Talbott, and council members Stephen K. Eugster, Cheryl L. Rodgers, and Steven Corker. The court issued a protective order, permitting certain discovery to be marked and treated as confidential.

The Developer then directed written discovery to Mr. Talbott, Mr. Eugster, Mr. Corker, and Ms. Rodgers, seeking, among other things, all records of meetings and communications with Metropolitan, a third-party to this suit. Metropolitan Mortgage is a private mortgage company with several subsidiaries. According to information filed with the Public Disclosure Commission, Metropolitan Mortgage, its affiliates, subsidiaries, employees, owners and a political action committee known as Straight Talk, which received contributions from Metropolitan Mortgage, made contributions to the political campaigns of Mr. Talbott, Mr. Eugster, Mr. Corker, and Ms. Rodgers. The commission's records show Metropolitan Mortgage was fined $10,000, with an additional $10,000 suspended, for failing to disclose $11,165 in contributions to former Mayor Talbott's campaign.

Mr. Talbott, Mr. Eugster, Mr. Corker and Ms. Rodgers refused to provide the requested documents. Mr. Talbott and Mr. Eugster claimed no documents were in their possession. Mr. Corker produced some documents, but none

related to River Park Square. Ms. Rodgers objected to the request, arguing it was "vague and ambiguous," "overbroad" and "unduly burdensome." Clerk's Papers (CP) at 1318. She additionally objected on First Amendment grounds.

The Developer then directed its discovery requests to Metropolitan. It filed six subpoenas duces tecum, seeking all documents relating to campaign contributions to Mr. Talbott, Mr. Eugster, Mr. Corker, and Ms. Rodgers; all records relating to campaign contributions to 22 other groups and individuals; all communication with various current and former elected officials, political candidates, and members of the media; and all documents regarding Metropolitan's development properties from January 1, 1995 to the present.

Metropolitan filed a motion to quash the subpoenas duces tecum based on procedural and substantive grounds. The City, Mr. Eugster, and Ms. Rodgers also filed motions to quash the subpoenas directed to Metropolitan. In response, the Developer filed a motion to compel production of the documents described in the subpoenas.

In its offer of proof, the Developer alleged C. Paul Sandifur, Jr., Metropolitan Mortgage's former chairman, president, and chief executive officer, had "extreme disdain and antipathy for the Cowles family, particularly the senior members of this family," stemming "from the perceived mistreatment of his father who, many years ago, had felt snubbed and looked down upon by the Cowles family." CP at 1076. The Developer alleged Metropolitan Mortgage contributed greatly to the campaigns of Mr. Talbott, Mr. Eugster, Ms. Rodgers and Mr. Corker in order to control their decisions regarding the River Park Square improvements in an effort to "[get] even with the Cowles family." CP at 1076. The Developer partly alleged a small group of people would meet in Metropolitan Mortgage's basement for early morning meetings regarding Spokane politics and the RPS dispute.

Metropolitan argued the subpoenas were procedurally defective based on the "utter breadth and burdensomeness." Report of Proceedings (RP) at 39. Metropolitan, the City, Mr. Eugster, and Ms. Rodgers objected on substantive grounds, arguing the subpoenas would infringe on their respective First Amendment rights.

The court ruled the subpoenas, "while in some cases relevant to the underlying issue," would have a chilling effect on our system's democratic process. RP at 86. The court then quashed the subpoenas duces tecum served on Metropolitan Mortgage and denied the Developer's motion to compel.

The Developer requested reconsideration, citing *Pleas v. City of Seattle*, 112 Wn.2d 794, 774 P.2d 1158 (1989) and arguing discovery was needed to support its tortious interference claim. It also argued the Washington public disclosure act, chapter 42.17 RCW (WPDA) and the Open Public Meetings Act of 1971, chapter 42.30 RCW (OPMA) provide policy reasons justifying disclosure. The court denied reconsideration, ruling *Pleas* was not controlling and WPDA and did not apply.

Next, the court considered attorney fees. Metropolitan Mortgage, Mr. Eugster and Ms. Rodgers requested fees under CR 26(c) (regarding protective orders), CR 37(a)(4) (regarding expenses for failure to make discovery), and CR 45 (regarding subpoenas). The Developers countered the subpoenas duces tecum related solely to CR 45, which makes no provision for attorney fees. The court awarded fees and costs under CR 26(c) and CR 37(a)(4) to Metropolitan Mortgage in the amount of $26,787.22, Mr. Eugster in the amount of $4,755, and Ms. Rodgers in the amount of $9,478.22. Without entering written findings of fact and conclusions of law, the court ruled the fees were reasonable.

This court granted discretionary review.

## ANALYSIS

### A. Order Quashing Subpoenas Duces Tecum

The issue is whether the trial court erred in quashing the Developer's subpoenas duces tecum directed to Metropolitan Mortgage.

■ A trial court's order granting or denying a motion to quash a subpoena is reviewed for an abuse of discretion. *Hammond v. Braden*, 16 Wn. App. 773, 776, 559 P.2d 1357 (1977). A court abuses its discretion when its decision is based on untenable grounds or reasoning. *Luckett v. Boeing Co.*, 98 Wn. App. 307, 309-10, 989 P.2d 1144 (1999).

■ ■ The First Amendment protects, among other rights, an individual's right to free speech and political association. *Fed. Election Comm'n v. Colo. Republican Fed. Campaign Comm.*, 533 U.S. 431, 440, 121 S. Ct. 2351, 150 L. Ed. 2d 461 (2001). "Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *Nat'l Ass'n for the Advancement of Colored People v. Alabama ex rel. Patterson*, 357 U.S. 449, 462, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958).

■ In the discovery context, Washington has established a three-part test for First Amendment challenges based on associational privilege. First, the party asserting the right "is only required to show some probability that the requested disclosure will harm its First Amendment rights." *Snedigar v. Hoddersen*, 114 Wn.2d 153, 158, 786 P.2d 781 (1990) (emphasis omitted). Once this threshold is met, the burden shifts to the party requesting discovery to establish (1) the relevance and materiality of the information sought, and (2) that reasonable efforts to obtain the information by other means has been unsuccessful. *Id*. at 164. Finally, even if both of these required showings are made, the court must still balance the claim of privilege against the need for disclosure to determine which is the strongest. *Id*. at 166.

█ The Developer contends the associational privilege is not applicable because Metropolitan is not a political association. While most courts addressing the right of association involve groups organized for a political or social purpose, the Supreme Court has extended the First Amendment rights of association and expression to private corporations. *See Austin v. Mich. State Chamber of Commerce*, 494 U.S. 652, 657, 110 S. Ct. 1391, 108 L. Ed. 2d 652 (1990) ("The mere fact that the Chamber is a corporation does not remove its speech from the ambit of the First Amendment.").

Additionally, Washington's Supreme Court has held that a county ordinance, requiring massage businesses to maintain certain patron records impermissibly intruded on the right of privacy and freedom of association. *See Myrick v. Bd. of Pierce County Comm'rs,* 102 Wn.2d 698, 705, 677 P.2d 140 (1984) ("Because of the importance of these tightly intertwined rights that Court has refused to draw a line excluding those 'engaged in business activities' from the reach of the First Amendment.") (quoting *Thomas v. Collins*, 323 U.S. 516, 531, 65 S. Ct. 315, 89 L. Ed. 430 (1945)).

█ The initial burden on the party contesting discovery on First Amendment grounds is discussed in *Right-Price Recreation, L.L.C. v. Connells Prairie Community Council*, 105 Wn. App. 813, 824-25, 21 P.3d 1157 (2001). An assumed potential chilling effect arises when the discovery requests include membership lists, minutes of meetings, financial records, documents and correspondence regarding political activities. *Id.* at 825. When parties "are required to disclose the identity of their members and the details of all of their activities, the freedom of members to promote their views suffers." *Id.*

Here, the Developer requested a substantial amount of information about Metropolitan's political affiliations and activities, its contributions to political candidates and political action committees, as well as its communications about various political issues to political candidates, offi-

cials and media organizations. Such requests create a potential chilling effect on Metropolitan's First Amendment rights, as well as the rights of those elected officials the Developer requested information about.

Relying on *Rhinehart v. Seattle Times, Inc.*, 59 Wn. App. 332, 798 P.2d 1155 (1990), the Developer counters that no chilling effect exists because of the protective order. In *Rhinehart*, the Seattle Times requested discovery of information from a religious organization, including membership lists and donation records. Under the principles announced in *Snedigar*, the court decided the organization could not invoke the associational privilege because it had failed to present evidence showing some probability that discovery would harm its constitutional rights, especially in light of a protective order that limited use of the documents to the litigation. *Rhinehart*, 59 Wn. App. at 338.

The court in *Right-Price* also considered the *Rhinehart* case, but concluded an assumed chilling effect still exists when certain information is requested. *Right-Price*, 105 Wn. App. at 825. Here, the Developer requested all documents relating to campaign contributions to Mr. Talbott, Mr. Eugster, Mr. Corker, and Ms. Rodgers; all records relating to campaign contributions to 22 other groups and individuals; and all communication with various current and former elected officials, political candidates, and members of the media. The protective order permitting Metropolitan to mark documents confidential is not enough to overcome the chilling effect in this case.

Therefore, the respondents have met their threshold burden of showing some probability of a constitutional infringement.

■ Turning to the second step, we consider whether the Developer has shown (1) relevance and materiality and (2) reasonable efforts to obtain the information elsewhere. Litigants seeking discovery must describe the information sought and its importance with a reasonable degree of specificity to establish relevance. *Right-Price*, 105 Wn. App. at 822. " 'Mere speculation that information might be useful

will not suffice; litigants seeking to compel discovery must describe the information they hope to obtain and its importance to their case . . . .' " *Id.* (quoting *Snedigar*, 114 Wn.2d at 165). While Metropolitan concedes some discovery may be relevant to the subject matter of the litigation, both Ms. Rodgers and the City oppose the discovery, arguing any assertion it was communicated in an improper manner is mere speculation.

A speculative theory that Metropolitan improperly controlled the actions of four City officials does not meet the *Right-Price* standard, which requires a description of the information sought and its importance with a reasonable degree of specificity. *Right-Price*, 105 Wn. App. at 822. Even assuming the Developer established relevance and materiality, it must also establish it has exhausted all other means of obtaining the requested information.

 To satisfy the exhaustion requirement, "the party seeking discovery must make a 'reasonably explicit' showing that every reasonable alternative source of information has been exhausted." *Right-Price*, 105 Wn. App. at 822 (quoting *Snedigar*, 114 Wn.2d at 165). Here, insufficient attempts were made to obtain the requested information through other reasonable sources. For example, the public officials were not formally deposed. The campaign contribution information requested is publicly available through the Public Disclosure Commission. The *Right-Price* standard requires a reasonably explicit showing that every reasonable alternative source has been tapped. *Right-Price*, 105 Wn. App. at 822. Thus, the Developer failed to meet its burden of establishing the second prong of the three-prong test discussed in *Snedigar* and *Right-Price*. Without a sufficient showing from the Developer, we do not reach the third prong and balance the need for disclosure against the claim of privilege.

 Regarding the tortious interference claim, Metropolitan and Ms. Rodgers challenge the Developer's arguments for discovery under *Pleas v. City of Seattle*, 112 Wn.2d 794, 774 P.2d 1158 (1989), WPDA, and OPMA. They

argue that these arguments were not raised until reconsideration. Evidence presented for the first time in a motion for reconsideration, without a showing that the party could not have obtained the evidence earlier, does not qualify as newly discovered evidence. *Morinaga v. Vue*, 85 Wn. App. 822, 831, 935 P.2d 637 (1997). Likewise, "Civil Rule 59 does not permit a plaintiff, finding a judgment unsatisfactory, to suddenly propose a new theory of the case." *Int'l Raceway, Inc. v. JDFJ Corp.*, 97 Wn. App. 1, 7, 970 P.2d 343 (1999) (citing *Vaughn v. Vaughn*, 23 Wn. App. 527, 531, 597 P.2d 932 (1979)).

The additional arguments by the Developer presented to the trial court in its motion for reconsideration were available at the motion to quash/motion to compel hearing. The Developer fails to adequately explain why it should be excused for neglecting to bring these arguments to the court's attention at that time. Even so, we believe some discussion is merited.

■ To prove tortious interference, the plaintiff must produce evidence sufficient to support all the following findings: (1) the existence of a valid contractual relationship or business expectancy, (2) the defendant's knowledge of and intentional interference with that relationship or expectancy, (3) a breach or termination of that relationship or expectancy induced or caused by the interference, (4) an improper purpose or the use of improper means by the defendant that caused the interference, and (5) resultant damage. *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997).

■ ■ A claim for tortious interference is established " 'when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself. Defendant's liability may arise from improper motives or from the use of improper means.' " *Pleas*, 112 Wn.2d at 804 (quoting *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.* 582 P.2d 1365, 1371 (Or. 1978)). "No question of privilege arises unless the interference would be wrongful but for the privilege[;] . . . [e]ven a recognized privilege [however] may

be overcome when the means used by the defendant are not justified by the reason for recognizing the privilege." *Id.* However, the court held "matters of privilege or justification continue to be affirmative defenses to be raised by the defendant." *Pleas*, 112 Wn.2d at 804.

*Pleas* is distinguishable. First, it does not relate to discovery. Second, although *Pleas* arose in the context of a similar claim as that asserted by the Developer, it does not mention First Amendment privilege. In the later cases of *Snedigar* and *Right-Price*, a specific test is developed for discovery that may infringe on First Amendment rights. Accordingly, *Pleas* does not provide legal authority to overcome the chilling effect the requested discovery would have on the respondents' First Amendment rights.

Next, a plaintiff asserting a claim under 42 U.S.C. § 1983 must establish that a person acting under color of state law deprived the plaintiff of a federal constitutional or statutory right. *Lesley v. Dep't of Soc. & Health Servs.*, 83 Wn. App. 263, 278, 921 P.2d 1066 (1996). The plaintiff must present evidence establishing gross negligence, recklessness, or deliberate indifference on the part of the state actor. *Id.* (citing *Peterson v. Littlejohn*, 56 Wn. App. 1, 14-15, 781 P.2d 1329 (1989)). Again, the First Amendment rights of the party contesting discovery must be weighed against the need for discovery. *Snedigar*, 114 Wn.2d at 166. Here, the Developer's due process claim does not overcome the chilling effect the requested discovery has on the respondents' First Amendment rights.

Next, the Developer contends statutory policy reasons justify the subpoenas. The WPDA refers to chapter 42.17 RCW and the public records act refers to sections 42.17.250-.348 of the WPDA. The WPDA is to be liberally construed to promote full access to public records, and its exemptions are to be narrowly construed. *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 251, 884 P.2d 592 (1994). "[F]ree and open examination of public records is in the public interest, even though such exami-

nation may cause inconvenience or embarrassment to public officials or others." RCW 42.17.340(3).

OPMA requires all meetings of a governing body of a public agency to be open and public. RCW 42.30.030. Further, "[n]o governing body of a public agency shall adopt any ordinance, resolution, rule, regulation, order, or directive, except in a meeting open to the public." RCW 42-.30.060. The purpose of OPMA is to permit the public to observe all steps in the making of governmental decisions. *Cathcart v. Andersen*, 85 Wn.2d 102, 107, 530 P.2d 313 (1975).

Because the subpoenas were directed to Metropolitan, a private third-party entity, a broad public policy analogy is difficult to draw from the policies and purposes of WPDA and OPMA. We are not persuaded by the Developer's arguments that the policies of these acts carry to necessarily sweep in documents held by a private entity. The Developer's arguments to extend the policies do not outweigh a constitutional privilege. Therefore, we reject the Developer's WPDA and OPMA arguments.

▮▮ Additionally, Metropolitan properly argues the subpoenas are procedurally flawed because they are overly broad and burdensome. Metropolitan is not a party. While parties to a lawsuit must accept its burdens as a natural part of civil litigation, "[n]on-parties parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (citing *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993); *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980); *Addamax Corp. v. Open Software Found., Inc.*, 148 F.R.D. 462, 468 (D. Mass. 1993)).

Metropolitan estimates it has 462 boxes needing review, which it estimates will take two people one month to do. Its information systems department would need two people for one week to make requested electronic documents acces-

sible. Its property department identified 1,875 properties related to the subpoenas and would need significant manpower to review documents relating to these properties for production. The market department and external affairs department have 14 boxes of archived materials and 20 boxes plus five file cabinets of active files that would need review. Based on the extensive discovery requested, the Developer's requests were overly broad and burdensome, thrusting an unwanted burden on a nonparty. *Cusumano*, 162 F.3d at 717. Moreover, the breathtakingly broad scope of discovery targeted in the subpoenas disregards the associational rights recognized above.

In sum, the Developer's subpoenas duces tecum in their present form violate the respondents' First Amendment rights under associational principles. The subpoenas are overly broad and unduly burdensome, making no attempt to distinguish between privileged and unprivileged material. The trial court did not err in quashing the subpoenas. Because of the interlocutory nature of this review, the trial court remains in the best position to resolve remaining discovery disputes in a manner consistent with the principles announced in this opinion.

## B. Attorney Fees

The issue is whether the trial court erred in deciding to award attorney fees to Metropolitan, Mr. Eugster, and Ms. Rodgers and in deciding fee reasonableness.

■ We review an award of attorney fees for abuse of discretion. *Mayer v. City of Seattle*, 102 Wn. App. 66, 79, 10 P.3d 408 (2000). Abuse is shown "when [the trial court's] decision is manifestly unreasonable or based upon untenable grounds . . . ." *Id.* The trial court awarded attorney fees and costs under CR 26(c) and CR 37(a)(4).

■ Under CR 26(c), the court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden

or expense . . . ." Further, CR 26(c) specifically permits the application of CR 37(a)(4):

> [T]he court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

Attorney fee decisions under CR 37 require the exercise of judicial discretion that will not be disturbed on appeal except upon a clear showing of abuse of discretion. *Reid Sand & Gravel, Inc. v. Bellevue Props.*, 7 Wn. App. 701, 705, 502 P.2d 480 (1972) (citing *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

The trial court stated that initially the issues in this case concerned CR 45, relating to subpoenas, but once the subpoenas were issued, the parties responded, which "brings into play, in my opinion, the exercise of the Court's discretion in dealing with the issue of attorney's fees. And, indeed triggers CR 37 and the attorney's fees provision and under CR 26." RP at 157. CR 26 and CR 37 support the court's award and, in light of our analysis supporting the trial court's decisions, we do not agree that the Developer's requests were substantially justified. And, CR 37(a)(4) expressly provides the court can order expenses for the "party or deponent." Given all, the trial court did not err in deciding to award attorney fees.

 Regarding the reasonableness of the attorney fee awards, we review the reasonableness of an award of attorney fees and costs for an abuse of discretion. *Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 519, 910 P.2d 462 (1996). However, the trial court must enter findings of fact and conclusions of law supporting an award of attorney fees. *Mahler v. Szucs*, 135 Wn.2d 398, 435, 957 P.2d 632 (1998). In *Mahler*, our Supreme Court noted the need for an adequate record to review a fee award, the absence of which

"will result in a remand of the award to the trial court to develop such a record." *Id.* Specifically, the reviewing court needs to know if the services of the attorneys "were reasonable or essential to the successful outcome. . . . [,] if there were any duplicative or unnecessary services. . . . [and] if the hourly rates were reasonable." *Id.* We need an adequate record to "exercise our supervisory role to ensure that discretion is exercised on articulable grounds." *Id.*

■ Here, the trial court did not enter specific and detailed findings and conclusions in support of its reasonableness determinations. But in its order awarding fees and costs to Metropolitan, the court states Metropolitan's fees and costs were reasonable, reflect a reasonable hourly rate, and "do not reflect time spent on unsuccessful claims, duplicated effort, or otherwise unproductive time." CP at 2175. According to the Developer, "[t]he billings for legal services submitted concerning resisting the subpoenas comprised 64 pages." Brief of Appellant at 46 (citing to CP 1624-88). On the other hand, the court merely concluded "the attorney's fees sought by Ms. Rodgers and Mr. Eugster are reasonable and necessary." RP at 159.

While the additional language in the attorney fees order for Metropolitan minimally satisfies *Mahler*, the court's oral ruling is insufficient to permit review of the award to Mr. Eugster and Ms. Rodgers. Therefore, the award of fees to Mr. Eugster and Ms. Rodgers must be vacated. Considering the interlocutory nature of this review, the trial court can, during the continuation of this case, provide appropriate findings and conclusions regarding the attorney fee and cost computations for the fee award to Mr. Eugster and Ms. Rodgers using the standards discussed in this opinion.

## C. Attorney Fees on Review

■ Metropolitan and Mr. Eugster ask for attorney fees on appeal. Mr. Eugster does not devote a special section of his joinder brief to the request for fees. Since he fails to comply with RAP 18.1(b), requiring a separate section, his

request is denied. *Phillips Bldg. Co. v. An*, 81 Wn. App. 696, 704-05, 915 P.2d 1146 (1996).

Metropolitan requests fees under RAP 14.2, RAP 18.1(a), and CR 37(a)(4). RAP 14.2 provides that costs will be awarded to the prevailing party on appeal, and RAP 18.1 allows for the recovery of reasonable attorney fees if applicable law grants the right to such recovery. As the prevailing party, Metropolitan should be awarded its attorney fees on appeal in accordance with its compliance with Title 14 of the Rules of Appellate Procedure.

## CONCLUSION

We affirm the trial court's order quashing the subpoenas duces tecum and the award of attorney fees to Metropolitan, but vacate the award to Mr. Eugster and Ms. Rodgers and direct reasonableness determinations in a manner consistent with this opinion. Metropolitan is entitled to fees as the prevailing party here.

SWEENEY, A.C.J., and KURTZ, J, concur.

Review denied at 153 Wn.2d 1012 (2005).