

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| LYNN DALSING, | ) | NO.70851-1-I |
| | ) | |
| Plaintiff, | ) | DIVISION ONE |
| | ) | |
| MICHAEL AMES, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PIERCE COUNTY, a municipal | ) | UNPUBLISHED OPINION |
| corporation, | ) | |
| Appellant. | ) | FILED: August 10, 2015 |
| | ) | |

LAU, J. —The trial court awarded attorney fees and costs to Detective Michael Ames—a nonparty—after he filed a successful motion for a protective order under CR 26(c) seeking to disclose e-mails between himself and Pierce County prosecutors regarding the criminal prosecution of Lynn Dalsing, the plaintiff below. The County appeals, challenging the award of attorney fees because (1) the trial court erred when it granted Ames' motion for a protective order, (2) its opposition to the motion was substantially justified, and (3) the amount of the award is unreasonable. Because the

civil rules allow a trial court to grant a motion for a protective order submitted by a nonparty and because the County's opposition to the motion was not substantially justified, we conclude the trial court acted within its discretion when it granted Ames' motion for a protective order. And because the trial court's findings of fact and conclusions of law adequately support the award, we affirm.

## FACTS

This appeal arises from Lynn Dalsing's[1] civil action against Pierce County for false arrest and malicious prosecution. In 2010, Pierce County Detectives Debbie Heishman and Mike Ames investigated Dalsing's husband, Michael Dalsing, for sex crimes and child pornography. During the investigation, the Detectives discovered a photograph on Michael Dalsing's computer depicting a naked adult woman lying on a bed with a naked pre-pubescent girl in a sexually explicit pose. Investigators suspected the woman in the photograph was Lynn Dalsing. On December 8, 2010, Lynn Dalsing was arrested and charged by information on one count of child molestation in the first degree and one count of exploitation of a minor. Detective Heishman stated in her declaration for determination for probable cause that Dalsing was the woman in the photograph: "One photograph depicted the defendant [Dalsing] lying on her bed, naked on her back with a pre-pubescent girl . . . lying naked on her back on top of the defendant." Clerk's Papers (CP) at 2.

Ames, a detective specializing in computer forensics, doubted the sufficiency of probable cause to charge Dalsing. In a June 9, 2011 e-mail exchange with Heishman—

---

[1] Although she was the plaintiff below, Dalsing is not party to this appeal. We refer to Lynn Dalsing as "Dalsing" in this appeal.

the lead detective on the case—Ames explained that minimal computer evidence existed to support Dalsing's prosecution:

> [Heishman]: Pros[ecutors] are wondering if you were able to tell if Lynn Dalsing had any type of account or files on the computers so we can charge her with the possession also?
>
> [Ames]: No, it appeared that he [Michael Dalsing] was the computer person. There is no way you can get by the defense that she will use which will be it was him and especially now that he is pleading to it. I could easily link him to the child porn but not her. No way do I want to go back into that case to look for something that I cannot prove. Definitely no link to her and the child porn other than that one picture but we can't see her so no way to prove that either. I did look hard at the porn that was downloaded from the internet and nothing leads back to her. I did look at that angle too especially after I found that one picture.

CP at 454 (emphasis added). Heishman forwarded Ames' response e-mail to Lori Kooiman, the deputy prosecutor assigned to the criminal case, who responded:

> We will have to meet, all of us, early next week and go through the evidence. I think you're missing the boat to some degree Mike [Ames], as he did not plead to any of the child porn, he pled to raping four kids. I do have to provide your e-mail to defense. I do want to discuss some of your assertions.

CP at 454 (emphasis added). Kooiman did not disclose the e-mail to Dalsing's defense counsel. On July 13, 2011, Pierce County prosecutors dismissed the charges against Dalsing without prejudice, stating that "the photograph that is the basis for the current case . . . is part of a known series of photographs not involving this defendant." CP at 146. Accordingly, Dalsing was released after seven months in jail.

On March 14, 2012, Dalsing filed a civil action against the County for false arrest and malicious prosecution.[2] Her complaint alleged that she was arrested and charged with first degree child molestation and sexual exploitation of a minor premised on the false allegation that she engaged in sexual conduct with a minor and photographed herself with the child in a sexually explicit pose. The complaint further alleged that after she was arrested and charged, Pierce County delayed several months before allowing Dalsing's criminal defense counsel access to the photograph, despite knowledge that the photograph constituted exculpatory evidence discoverable under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L. Ed. 2d 215 (1963). Dalsing alleged the prosecutors continued to prosecute the criminal case even after they learned Dalsing was not the woman depicted in the photograph. Prosecutors pressed their case against Dalsing until the eve of trial when they finally acknowledged the County could not prove its case.

The complaint alleged Pierce County's liability through the actions of its employees and agents, specifically Detective Ames and Detective Heishman:

> Plaintiff, Lynn Dalsing was falsely arrested on December 8, 2010 as the result of a seriously flawed investigation by members of the Pierce County Sheriff's Department, including . . . Detective Mike Ames . . . in the course of investigating the sex-crimes and pornography cases against Michael Dalsing and William Maes, inspected computers and images on the computers . . . Detective Ames falsely and/or without probable cause identified photographs as depicting Lynn Dalsing as posing nakedly with a small, naked female child.
>
> . . .
>
> Following the arrest of Lynn Dalsing . . . Ames and other yet to be identified employees of Pierce County frustrated the efforts by Plaintiff Dalsing's criminal defense lawyer . . . to obtain copies of photographs that were the basis for the prosecution . . .
>
> . . .

---

[2] Dalsing did not name Ames as a defendant in her complaint.

-4-

The police case file developed by Detectives . . . Ames and others, contained information that clearly notified Pierce County detectives and Pierce County of the falsity of their allegations.

CP at 2-4.

Ames expressed his concerns regarding the e-mail to Pierce County civil deputy prosecutors when they contacted him about Dalsing's civil action. On October 18, 2012, Ames forwarded to the civil deputy prosecutor, Jim Richmond, the June 9, 2011 e-mail exchange between Heishman and Kooiman.

In July 2012, Dalsing made several discovery requests, including a request for all e-mail communications:

> **REQUEST FOR PRODUCTION NO. 5**: Produce the entire Pierce County Sheriff's Department Files involving the following investigations:
> A. Incident #102510339, including any and all evidence, including but not limited to photographs, videotapes, computer files and records, and any and all "documents" and tangible items of evidence. This request includes requests for any and all email communications, within the Pierce County Sheriff's Department, to and from the Pierce County Prosecutor's Office, and to and from the Department of Social & Health Services[.]

CP at 200, 379. The County responded on October 31, 2012. The County objected to this request for production on grounds that the request was "vague, overbroad, and outside the scope of discovery under CR 26 (b)(1) and privileged under RCW 42.56.240 and RCW 10.97.050." CP at 201.

During his discovery deposition on February 14, 2013, Ames learned for the first time that the County never disclosed his e-mail exchange with prosecutors to Dalsing's criminal defense counsel. When Dalsing's civil counsel questioned Ames about communication with the prosecutor's office regarding the photograph allegedly depicting Dalsing, Richmond objected and directed Ames not to answer on work product grounds.

After his deposition, Ames was upset on learning of the prosecutor's failure to turn over the e-mails. He hired attorney Joan Mell to represent him. On February 20, 2013, Mell contacted Richmond to discuss Ames' concerns over his deposition and the prosecutor's failure to turn over the e-mails. Mell requested to participate in a CR 26(i) discovery conference[3] scheduled for February 22, but Richmond declined her request. Mell spoke with Richmond over the phone on February 21 and 22, explaining e-mails between Heishman and Kooiman were not privileged attorney work product. Richmond maintained that the County was not required to disclose the e-mails. They failed to reach an agreement. Mell agreed to wait and see if Dalsing served any motion regarding the alleged privileged e-mails.

On March 7, 2013, Dalsing filed a motion to compel discovery, seeking "emails between the Pierce County Prosecutor's Office (Criminal Division) and Detectives Heishman, Ames and/or any and all other police personnel . . . concerning the investigation of facts related to the prosecution of Lynn Dalsing, for in camera review." CP at 121. The motion also sought a ruling on the County's deposition objections and authority to depose prosecuting attorneys. On March 12, Ames filed a motion for order permitting documents to be filed under seal. Ames offered the e-mails for in camera review "pursuant to the protective order provisions of CR 26(c)" so that the court could "resolve the dispute over the scope and application of attorney client privilege and work product." CP at 285-87. On March 14, the County filed a privilege log for the first time.

---

[3] CR 26(i) requires counsel to meet and confer in an effort to resolve discovery disputes before submitting them to the court. The attorneys must meet and confer either in person or by telephone. Rudolph v. Empirical Research Systems, Inc., 107 Wn. App. 861, 28 P.3d 813 (2001).

On March 22, the County filed responses opposing both Dalsing's motion to compel and Ames' motion to file under seal.

On April 5, the court granted Ames' motion to file the e-mails under seal. On April 22, however, the court granted Dalsing's motion to compel in part and ruled that the e-mails did not need to be filed under seal.

On July 2, Ames filed a motion for his attorney fees and costs under CR 26 and CR 37. The County opposed the motion on several grounds. The trial court granted Ames' motion. Relying on Eugster v. City of Spokane, 121 Wn. App. 799, 91 P.3d 117 (2004), the court reasoned that "trial courts have the authority under CR 26(c) to award attorney fees to a nonparty who has prevailed on a motion for protective order through the application of CR 37(a)(4)." CP at 795. The court acknowledged that, even though Ames never sought a protective order, it nevertheless had the authority to award fees to Ames due to "the unique circumstances of this case." CP at 796. As required by CR 37(a)(4), the court also concluded that (1) the County's conduct during discovery was not substantially justified, (2) there were no other reasons why an award would be unjust, and (3) the requested fees were reasonable. The County appeals the award.

## ANALYSIS

### Standard of Review

This court reviews an award of attorney fees for abuse of discretion. Mayer v. City of Seattle, 102 Wn. App. 66, 79, 10 P.3d 408 (2000). Attorney fees awarded under CR 37 will not be disturbed on appeal except upon a clear showing of abuse of discretion. Reid Sand & Gravel, Inc. v. Bellevue Prop., 7 Wn. App. 701, 705, 502 P.2d

480 (1972). Abuse is shown when the trial court's decision is manifestly unreasonable or based upon untenable grounds. Mayer, 102 Wn. App. at 79.

Award of Attorney Fees to Nonparty Under CR 26 and CR 37

Generally, under CR 26 and CR 37, a trial court may award attorney fees to a nonparty who files a successful motion for a protective order. See Eugster, 121 Wn. App. at 815-16. CR 26(c) provides, in part:

> **(c) Protective Orders.** Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the county where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .
>
> . . .
> The provisions of rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

CR 26(c). CR 37(a)(4) governs awards granted under CR 26(c):

> If the motion [for a protective order] is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

CR 37(a)(4). Awarding fees under these provisions is a two-step process: first, CR 26(c) provides the criteria for determining whether the court should craft an order to protect a party or person from whom discovery is sought. Second, if the court grants an order seeking protection, CR 37(a)(4) allows the court to award fees to the movant unless the party opposing the protective order was substantially justified in doing so or other circumstances make the award unjust. Therefore, we address (1) whether the trial court abused its discretion when it granted Ames' motion under CR 26(c), and (2)

whether the trial court abused its discretion when it awarded Ames attorney fees related to that motion under CR 37(a)(4).

Motion Under CR 26(c)

The County fails to show that the court abused its discretion when it granted Ames' motion under CR 26.

The plain, unambiguous language of CR 26(c) provides courts with broad discretion to tailor relief regarding the scope of discovery. Indeed, "[CR] 26(c) was adopted as a safeguard for the protection of parties and witnesses in view of the almost unlimited right of discovery given by Rule 26 (b)(1). The provision emphasizes the complete control that the court has over the discovery process." 8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2036 (2010) (footnote omitted).[4] CR 26(c) allows the court to "make any order which justice requires to protect a party or person from annoyance [or] embarrassment." CR 26(c) (emphasis added). The plain meaning of CR 26(c) unambiguously provides courts significant authority to craft various remedies to tailor the discovery process. See King v. Olympic Pipeline Co., 104 Wn. App. 338, 371, 16 P.3d 45 (2000) ("Both the rule and the case law thus provide a trial court with substantial latitude to decide when a protective order is appropriate and what degree of protection is required given the unique character of the discovery process."); Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2, 197 F.3d 922, 925 (8th Cir. 1999) ("Because of

_____

[4] CR 26(c) governs protective orders. This rule's text and substance is nearly identical to the comparable federal rule. Thus, federal interpretations of the rule provide helpful guidance and are frequently cited as persuasive. 3A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CR 1 author's cmt. 2, at 12 (6th ed. 2013).

liberal discovery and the potential for abuse, the federal rules confer broad discretion on the district court to decide when a protective order is appropriate, and what degree of protection is required."). Thus, a court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule. Brulotte v. Regimbal, 368 F.2d 1003 (9th Cir. 1966).

Accordingly, given the unique circumstances presented here, we conclude the trial court acted well within its discretion when it granted Ames' motion to file the e-mails under seal. In her complaint, Dalsing alleged specifically that Ames, together with others in the Pierce County Sheriff's Department, pursued a malicious prosecution against her without probable cause. But Ames reasonably doubted there was sufficient probable cause to charge Dalsing, and he stated this concern to prosecutors in an e-mail. Ames feared that the County's unwarranted refusal to allow discovery of the e-mail and his related testimony would irreparably harm his personal and professional reputation. When the County refused to disclose the e-mail on attorney work product grounds, Ames retained private counsel to protect his personal and professional interests. Based on his examination of the evidence, training and experience, Ames vehemently disagreed with the County prosecutors that probable cause existed to prosecute Dalsing. Under these unique circumstances, the trial court reasonably determined that "justice require[d]" an order granting Ames' motion to file the e-mail under seal "to protect [Ames] from annoyance, embarrassment, oppression, or undue burden . . . ." CR 26(c).[5]

---

[5] The trial court was not precluded from considering Ames' motion—as the County contends—because of any alleged failure to satisfy the meet-and-confer

-10-

The County argues the trial court erroneously granted Ames' motion because, fundamentally, Ames' motion was not a protective order for purposes of CR 26(c). This argument elevates form over substance.

First, the County argues that Ames was not a "person from whom discovery [was] sought," CR 26(c), and therefore he cannot seek protection under CR 26(c). The County provides no authority supporting this assertion. See DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). Although a protective order is generally viewed as restricting discovery, as noted above, nothing in the rules or case authority limits the trial court's authority in granting the relief sought by Ames here. Further, Ames was a "person from who discovery [was] sought." CR 26(c). Not only was Ames deposed by Dalsing, he possessed unique knowledge central to Dalsing's lawsuit and contained in the disputed e-mails. Ames had a protectable individual and professional interest that he justifiably sought to protect under the civil rules of discovery. "Whenever possible, the rules of civil procedure should be applied in

---

requirement under CR 26(i). The record shows that Ames' attorney made a good faith effort to meet and confer with the County. Further, she discussed Ames' concerns underlying his motion during a phone call. In any event, failure to meet the CR 26(i) requirements does not prevent a court from considering a discovery motion:

> We have already explained that failure to strictly comply with the procedural provision of CR 26(i) does not divest the court of jurisdiction to hear discovery motions. Likewise, we have explained that a court has discretion to decide whether to hear a motion even where the moving party has failed to strictly comply with the rule.

Amy v. Kmart of Washington LLC, 153 Wn. App. 846, 863, 223 P.3d 1247 (2009).

such a way that substance will prevail over form." <u>Griffith v. City of Bellevue</u>, 130 Wn.2d 189, 192 P.2d 83 (1996). Civil Rule 1 codifies this principle. It states that the civil rules shall be construed to secure the just, speedy, and inexpensive determination of actions. In <u>Spokane County v. Specialty Auto and Truck Painting, Inc.</u>, 153 Wn.2d 238, 103 P.3d 729 (2004), the court stated,

> CR 1 requires Washington courts to interpret the court rules in a manner "that advances the underlying purpose of the rules, which is to reach a just determination in every action." <u>Burnet v. Spokane Ambulance</u>, 131 Wn.2d 484, 498, 933 P.2d 1036 (1997). The court rules are intended to allow the court to reach the merits of an action. <u>Sheldon v. Fettig</u>, 129 Wn.2d 601, 609, 919 P.2d 1209 (1996).

<u>Spokane County</u>, 153 Wn.2d at 245.

Second, the County contends that Ames failed to seek "protection" because he never requested a limitation on discovery nor did his motion argue for a specific outcome.[6] To support this contention, the County relies on the various ways a trial court might limit discovery, listed under CR 26(c)(1)–(7). Though this list of remedies generally restricts discovery, it is not exclusive. Courts may fashion other remedies not listed in CR 26(c) they deem appropriate. <u>See</u> 3A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CR 26 author's cmt. 43, at 652 (6th ed. 2013). "[A] court is not limited to the eight specified types of orders. Instead it may make 'any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,' and the court has considerable latitude in focusing on the nature of the harm advanced to justify the order." 8A WRIGHT, MILLER &

---

[6] Ames' motion requested that the court "resolve the dispute over the scope and application of attorney client privilege and work product," specifically regarding his e-mail with prosecutors. CP at 287-288.

MARCUS, § 2036 (2010). The freedom to fashion appropriate remedies to the unique problems that arise during discovery is consistent with the "substantial latitude" courts possess when considering how to rule on a protective order. King, 104 Wn. App. at 371.

Finally, the County argues that Ames never moved for a protective order under CR 26(c), citing a declaration in which Ames' attorney stated that Ames' motion did not seek protection but instead was "responding to Lynn Dalsing's motion to compel." CP at 365. But Ames' motion to file the e-mails under seal expressly invoked "the protective order provisions of CR 26(c)." CP at 285–87. Further, a court may award fees under CR 26 and CR 37 even if the motion giving rise to those fees was not expressly filed under CR 26. See Eugster, 121 Wn. App. at 815 (motion brought under CR 45 "trigger[ed]" the attorney fees provision under CR 26).[7]

We agree, as the trial court noted, this dispute stems from unusual circumstances. As discussed above, trial courts have broad discretion to reach the merits of a discovery dispute and to craft protective orders during discovery to ensure a just determination of the action. Under the unique circumstances presented here, the trial court acted within its discretion when it granted Ames' motion.

---

[7] The County contends Eugster does not apply here because Ames never filed or prevailed on a motion for a protective order: "Eugster never considered awarding attorney fees for a nonparty's costs unrelated to compelling—or seeking protection from—discovery, and that did not concern CR 26 or CR 37." Br. of Appellant at 26. But Eugster confirms the plain language in CR 26 and CR 37—a nonparty who files a successful motion for a protective order may receive attorney fees for that order. Eugster, 121 Wn. App. at 815. As discussed above, Ames' motion can be fairly characterized as a protective order under CR 26(c). Therefore, under CR 26, CR 37, and Eugster, the trial court had the authority to grant Ames' motion and consider awarding related attorney fees. Eugster, 121 Wn. App. at 815.

Attorney Fees Under CR 37

Next we consider whether CR 37 provides any limitation on the court's award of attorney fees. Ames sought reasonable attorney fees for litigating the work product privilege issue. Because the County failed to show that its opposition to Ames' motion was substantially justified, we conclude the trial court acted within its discretion when it awarded Ames attorney fees and costs.[8]

CR 37(a)(4) requires a court to award attorney fees to a party who files a successful protective order under CR 26(c) unless the party opposing the motion was substantially justified in doing so or other circumstances make the award unjust:

> If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct for both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

CR 37(a)(4). The trial court has broad discretion to award attorney fees, and we do not disturb an award of attorney fees except upon a clear showing that the court abused that discretion. Reid Sand, 7 Wn. App. at 705.

The County primarily argues its opposition to Ames' motion was substantially justified because the e-mails constituted privileged attorney work product. The trial court ruled that the County's assertion of attorney work product doctrine lacked merit

---

[8] The County relies heavily on our court commissioner's December 2013 written ruling denying the County's motion for discretionary review of various trial court discovery rulings related to Dalsing's motion to compel following its *in camera* review. The commissioner's ruling has no binding effect on an independent review of the issues here. We decline to consider the commissioner's discretionary review ruling.

because the e-mails at issue contained "information relevant to mental impressions that [were] directly at issue in this case, and Plaintiff has demonstrated a substantial need for access to these documents." CP at 397. The County's opposition was not substantially justified because Ames sought only to file the e-mails under seal so the court could review the e-mails *in camera* and determine whether any privilege applied. Ames did not provide the e-mails to Dalsing. The County was therefore not justified in opposing the motion because *in camera* review is the appropriate action for a court to take when considering whether evidence is privileged. See Limstrom v. Ladenburg, 136 Wn.2d 595, 615, 963 P.2d 869 (1998) ("the only way that a court can accurately determine what portions, if any, of the file are exempt from disclosure is by an in camera review of [the files]." (quoting Newman v. King County, 133 Wn.2d 565, 583, 947 P.2d 712 (1997) (Alexander, J., dissenting). Even if the County correctly asserted attorney work product privilege, the trial court properly granted Ames the remedy he sought—*in camera* review of the contested e-mails.

Because the County's opposition to Ames' motion was not substantially justified, the County failed to make a clear showing that the trial court abused its discretion when it awarded Ames attorney fees.

The County also argues that its opposition to Ames' motion to file documents under seal and for *in camera* review was justified because Dalsing's motion to compel discovery rendered Ames' motion unnecessary. We disagree. The trial court is in the best position to determine whether Ames' motion and the discovery documents he submitted for the court's *in camera* review was necessary for a proper ruling on the

-15-

discovery dispute. The July 22, 2013 written order granting Ames fees and costs

explains the court's rationale for its award:

2. If the Court has the discretion to award attorney fees under the civil rules, was Pierce County's discovery conduct substantially justified?

Pierce County's assertion of the work product privilege during Det. Ames's deposition and instructing him not to answer questions was not substantially justified. First, Det. Ames was given the impression months before his deposition that his emails would be produced. He provided copies to Pierce County's attorney in October 2012. Pierce County provided no privilege log to Plaintiff Dalsing until a month after Det. Ames's deposition and only after Det. Ames filed his motion seeking court review of the emails in question. Det. Ames had reasonable concerns that his professional reputation could be impaired by the non-disclosure of his emails and he had a right to seek relief from this Court. Pierce County did not seek a protective order until after Plaintiff Dalsing filed her motion to compel and after Det. Ames made it clear he intended to challenge the asserted work product privilege.

3. Are there any other reasons why an award of attorney fees would be unjust?

Pierce County argues that Det. Ames had no need to inject himself into the discovery dispute because Plaintiff Dalsing was contesting the work product privilege. But Det. Ames was in possession of information and evidence that the Court found important in rendering a decision on the discovery motions—information that Plaintiff Dalsing does not know and has no ability to present to the Court. Given Det. Ames's role in the underlying investigation and Pierce County's stance during discovery, the Court sees no injustice in awarding him the legal fees he incurred to litigate the work product privilege issue.

CP at 766. The court's thoughtful explanation of its reasoning makes clear that the

County's opposition to Ames' motion was not substantially justified and the award of

fees, "given the unique circumstances of this case," was not unjust. CP at 766. The

trial court's order granting in part and denying in part Dalsing's motion to compel shows

that the court reviewed Ames' motion and conducted an *in camera* review of "the

-16-

documents submitted" by Ames.[9] The court concluded these documents are discoverable. The record here leaves no doubt that the trial court did not view Ames' motion as duplicative or unnecessary.

The trial court did not abuse its discretion in granting attorney fees and costs to Ames.

### Reasonableness of Attorney Fees

The trial court awarded Ames attorney fees and costs under CR 37 related to his motion for *in camera* review in the amount of $4,749.99. The County disputes the amount of the award, arguing that the billed services were not reasonable or essential to the outcome and that the trial court's order lacks sufficient factual findings to support the amount awarded. We disagree. Because Ames submitted sufficient documentation demonstrating the reasonableness of the award, the trial court relied on this documentation when it entered its findings and conclusions, and the court's findings of fact and conclusions of law are adequate to support the amount awarded, we conclude the trial court acted within its discretion when it entered the award for attorney fees and costs.

"[W]e review the reasonableness of an award of attorney fees and costs for an abuse of discretion." Eugster, 121 Wn. App. at 815. But "the absence of an adequate record upon which to review a fee award will result in a remand of the award to the trial court to develop such a record." Mahler v. Szucs, 135 Wn.2d 398, 435, 957 P.2d 632

---

[9] Our determination is limited to the merits of the trial court's fees and cost award to Ames. We express no opinion on the propriety of the April 22, 2013 discovery rulings granting in part and denying in part Dalsing's motion to compel following *in camera* review.

(1998). "Under the lodestar method of calculating an award of fees, the court must first determine that counsel expended a reasonable number of hours in securing a successful recovery for the client and that the hourly rate counsel billed the client was reasonable . . . The lodestar fee is the reasonable number of hours incurred in obtaining the successful result multiplied by the reasonable hourly rate. The court presumes that the lodestar amount is a reasonable fee." Bloor v. Fritz, 143 Wn. App. 718, 750, 180 P.3d 805 (2008). Accordingly, the trial court must enter findings of fact and conclusions of law establishing an adequate record such that the reviewing court can determine whether the billed services were "reasonable or essential to the successful outcome." Mahler, 135 Wn.2d at 435.

We conclude there is an adequate record here to support the reasonableness of the award. The record shows the trial court actively and independently addressed the question of what was a reasonable fee. The court wrote and entered six pages of findings of fact and conclusions of law supporting its award of fees and costs and made adjustments to amounts. Ames submitted his declaration, exhibits, and contemporaneous time records maintained by counsel supporting the amount of the award. The time records indicate by date, the type of work performed, the time billed, the hourly rate, and the amount. Ames' declaration shows a total of 16.1 hours billed by counsel and a total of $22.49 for costs.[10] Ames' attorney also submitted a declaration with exhibits stating that her hourly rates were comparable to services provided by the

---

[10] After reducing the total by $130 for a clerical error and adding $325 for additional time devoted to the motion, the trial court awarded a total of $4749.99 instead of the total stated in the time records.

County in similar matters. She stated her hourly rate and that of her paralegal. She also stated the hourly rates were similar to the rates for the attorney and paralegal selected by the County to represent Ames.[11]

The trial court reviewed Ames' documentation when it considered his motion for attorney fees. The trial court noted in its written findings and conclusions that documentation was sufficient to "determine the amount of time spent, the tasks performed, and the hourly rate Det. Ames's attorney charged for the tasks performed." CP at 766-67. The trial court also concluded "the hourly rate of $325 is consistent with the market rates in this legal community for an attorney of Ms. Mell's experience." CP at 767. The court also concluded "the time incurred for addressing the work product privilege issue was reasonable and necessary." CP at 767.

This record is adequate to support the award. The record and the trial court's findings must demonstrate that its "discretion [was] exercised on articulable grounds." Eugster, 121 Wn. App. at 816. The documents provided by Ames and his attorney were sufficient to allow the court to conduct a critical review of the fees and costs requested by Ames. The trial court did not simply accept unquestionably the fee declarations. The trial court indicated in its written findings of fact and conclusions of law that it relied on these documents when it found the attorney fees were "reasonable and necessary." CP at 767.

---

[11] The County notes that Mell's rates are 50 dollars more than the rates for the attorney and paralegal selected by the county. This does not mean, however, that Mell's billing rates were unreasonable. The rates need only be comparable. In response to the County's request that the trial court adjust the award, Ames submitted a declaration demonstrating that Mell's rates were similar to other attorney rates in similar matters.

The County argues the record is inadequate, relying on Eugster for the proposition that a trial court commits reversible err by "merely conclud[ing] the attorney's fees sought . . . are reasonable and necessary." Eugster, 121 Wn. App. at 816. Eugster does not apply. There, the trial court erred because it failed to enter any findings and conclusions in support of its determination of reasonableness. Eugster, 121 Wn. App. at 816. Instead, the trial court simply stated the fees were reasonable in its oral ruling. Eugster, 121 Wn. App. at 816. Accordingly, the court vacated the award and noted the trial court would have an opportunity to enter the appropriate findings during the continuation of the case.[12] Eugster, 121 Wn. App. at 816. As discussed above, the trial court here entered written findings and conclusions stating the award was reasonable and necessary. The trial court also indicated it based its review on the documentation Ames provided. The trial court acted well within its discretion when it granted Ames' motion for attorney fees and costs.

Attorney Fees on Appeal

Because Ames has prevailed on review, we grant his request for reasonable attorney fees and costs on appeal under RAP 14.2, RAP 18.1(a), and CR 37(a)(4). See, e.g., Eugster, 121 Wn. App. at 817 (granting the prevailing party attorney fees on appeal under RAP 14.2, RAP 18.1(a), and CR 37(a)(4)). Fees and costs are granted conditioned on compliance with RAP 18.1.

---

[12] Eugster involved an interlocutory appeal. Eugster, 121 Wn. App. at 816.

-20-

## CONCLUSION

Because the trial court acted well within its discretion when it granted Ames' motion to file the e-mails under seal, and because the County's opposition to the motion was not substantially justified, we conclude the trial court properly exercised its broad discretion when it awarded Ames attorney fees. Further, the record and the trial court's findings of fact and conclusions of law support the trial court's award. We affirm.

WE CONCUR: