IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

TED SPICE, a Single Person, and
PLEXUS INVESTMENTS, LLC, a
Washington Limited Liability Company,

Appellants,

v.

CAROLYN A. LAKE, Individually and on
Behalf of the Marital Community
Comprised of CAROLYN A. LAKE and
JOHN DOE LAKE; and GOODSTEIN LAW
GROUP, PLLC, a Washington
Professional Limited Liability Company,

Respondents.

No. 82683-2-I

DIVISION ONE

UNPUBLISHED OPINION

ANDRUS, C.J. — Ted Spice and a business he formed, Plexus Investments LLC, appeal the summary judgment dismissal of their legal malpractice claim against Carolyn Lake and her employer, Goodstein Law Group PLLC. Spice contends there are genuine issues of material fact as to whether Lake breached her duty of care and caused Spice damage. Spice also appeals the trial court's award of discovery sanctions. We affirm.

## FACTS

The history of Spice's efforts to develop a parcel of land in Puyallup, Washington, and the disputes his activities engendered with the City of Puyallup

Citations and pin cites are based on the Westlaw online version of the cited material.

(the City), his former business partner Doris Mathews, her estate after she passed away (Mathews Estate), and her daughter, Donna Dubois, is well known to this court.[1]

Spice has now sued his former attorney, Lake, who represented him in his two Land Use Petition Act[2] (LUPA) appeals, claiming he was unable to complete his planned development because of her legal malpractice. A short summary of the facts, to put this claim into context, is in order.

In September 2003, Spice began a business relationship with Doris Mathews in which Spice agreed to develop a number of properties she owned. Mathews initially signed a letter granting Spice the authority to act as her agent regarding her properties. In 2004, Mathews entered into an agreement with Spice, giving him the right to receive one-half of all proceeds from the property sales, investments, developments, or refinancing from her properties, up to $8 million. Mathews later executed a durable power of attorney giving Spice the authority to act on her behalf.

Mathews and Spice formed Plexus Investments LLC (Plexus) to hold, develop and maintain several business properties. Among these properties was a 3.5-acre plot located at 11003 58th Street Court East, Puyallup, WA 98372 (the Property).[3] The Property, located outside the Puyallup city limits, had several

---

[1] See Spice v. Pierce County, 149 Wn. App. 461, 204 P.3d 254 (2009) (LUPA I); Spice v. Dubois, No. 44101-2-II, noted at 192 Wn. App. 1054 (2016); Spice v. Estate of Mathews, No. 48458-7-II, noted at 1 Wn. App. 2d 1040 (2017); Spice v. Pierce County, No. 45476-9-II, noted at 6 Wn. App. 2d 1026 (2018) (LUPA II); Spice v. Estate of Mathews, No. 50915-6-II, noted at 10 Wn. App. 2d 1043 (2019); Spice v. Estate of Mathews, Pierce County Superior Court No. 10-4-0037-5, on appeal under No. 55314-7-II (2020).

[2] Chapter 36.70C RCW

[3] Between March 2004 and June 2009, the title to the Property was held by various individuals or entities. Mathews initially quitclaimed the Property to Plexus. But in January 2007, Plexus

residential units in a state of disrepair. Spice and Mathews wanted to redevelop the Property for commercial use.

The planned development required expanded water service from the City. At the time, to obtain the necessary building permits, commercial developers were required to obtain a water availability letter from the City. In June 2004, the City refused to grant Spice a water availability letter because the Property was outside city limits and it claimed it had no obligation to provide additional water unless Spice could demonstrate that the Property was part of an ongoing annexation. The City rejected a number of applications for water availability letters from similarly situated property owners, including Mike Stanzel.

In October 2004, Spice hired Lake of the Goodstein Law Group PLLC to represent him in his dispute with the City. Lake initiated the dispute resolution process specified under the Pierce County Code and a Pierce County hearing examiner ruled that, because the City was unwilling to provide water service, Spice could pursue alternative water resources. If alternative water sources were not feasible, the hearing examiner told Spice that he could request an order requiring the City to provide the necessary water.

On February 2, 2006, Lake filed Spice's first LUPA petition seeking review of the hearing examiner's decision (LUPA I). Lake took no further action on the petition until November 2006 at which time she recommended that Spice withdraw

---

quitclaimed the Property back to Mathews, who then conveyed a one-third interest in the Property to Spice in December 2007. In June 2009, Mathews signed another quitclaim conveying the remaining "three quarters interest" in the Property to Spice. After Mathews' death, Spice and her estate, managed by Mathews' daughter, Donna Dubois, litigated the ownership of this Property, with a jury determining that Spice's share was only 25 percent.

the petition and instead ask the hearing examiner to compel the City to provide water, as contemplated by his administrative order. When Lake voluntarily dismissed the LUPA I petition, the City moved to have it dismissed with prejudice. The trial court granted the motion to dismiss with prejudice, over Lake's objection.

Meanwhile, Spice explored alternative water sources. When it became apparent that there were no feasible water alternatives for the Property, Lake filed a request for another hearing with the hearing examiner seeking to compel the City to provide water. She premised her request on the hearing examiner's earlier ruling inviting Spice to revisit the issue. But on August 7, 2007, the hearing examiner denied the application, concluding it lacked the legal authority under the Puyallup City Code to order the City to provide water services.

On August 29, 2007, Lake filed a second LUPA petition for review of the hearing examiner's August 7 decision, seeking a declaratory judgment and tort damages for the City's delay in providing water (LUPA II). By this time, Mathews again held title to the Property, and Lake, believing Spice had Mathews' authority to file suit in her name, named Mathews as a party to LUPA II.[4]

The City raised, as a defense to Spice's LUPA II petition, the dismissal of the LUPA I petition. Lake moved to vacate the order of dismissal but the trial court denied her motion. Lake appealed that ruling to Division Two of this court.

In September 2008, in ruling on Spice's LUPA II petition, the superior court concluded that the hearing examiner did not have the authority to order the City to

---

[4] Unbeknownst to Lake at the time, Mathews had rescinded all prior powers of attorney and signed a new durable power of attorney naming her daughter, Donna DuBois, as her exclusive attorney-in-fact.

- 4 -

provide water service, but did have authority to determine whether the City's pre-conditions to furnishing water were reasonable. The trial court bifurcated Spice's damages claim from the LUPA appeal and remanded the LUPA matter to the hearing examiner to determine whether the City could precondition the provision of water service on annexation. The trial court ordered the parties to set Spice's damages claim for trial.

While Spice litigated this water dispute with the City, Stanzel, who owned a nearby property, litigated a similar dispute with the City. See generally Stanzel v. City of Puyallup, 150 Wn. App. 835, 209 P.3d 534 (2009). Like Spice, Stanzel sought a water availability letter from the City to develop property located outside the city limits, in an area not being annexed, and he had no other feasible water source. And as in Spice's case, the Hearing Examiner concluded he lacked the authority to force the City to provide expanded water service to Stanzel's property. Stanzel filed a LUPA petition challenging this ruling and, in April 2008, a superior court ruled that the Hearing Examiner did have authority to order the City to issue a water availability letter, a ruling that conflicted with the superior court ruling in Spice's LUPA II case. The City appealed. Their dispute continued until Stanzel and the City settled in 2011.

But during the pendency of Stanzel's case with the City, in February 2009 Lake sent Spice an email highlighting the similarities between the two cases and explained that they could either proceed with his damages lawsuit contemporaneously with Stanzel's appeal or wait to see the outcome of the Stanzel case before deciding how to proceed. She laid out several options, including

asking the hearing examiner to rule that annexation was not a reasonable condition for water service, asking the hearing examiner to stay the LUPA II matter pending the outcome of Stanzel's appeal, moving ahead to set the damages claim for trial, or moving to stay all trial court proceedings.

Lake ultimately recommended that Spice ask the hearing examiner to stay the administrative proceeding and to ask the trial court to stay the damages trial pending the outcome of the Stanzel case. Spice agreed that the "outcome of Stanzel is paramount" and told Lake to "HOLD OFF ON EVERYTHING UNTIL THE OUTCOME OF THE STANZEL APPEAL" so long as they would not lose any rights. Lake took no action in superior court or before the hearing examiner.

In March 2009, Division Two concluded that Lake's voluntary withdrawal of the LUPA I petition extinguished Spice's statutory right to judicial review of the hearing examiner's first decision and held that the trial court's order dismissing the LUPA I petition with prejudice and the order denying the motion to vacate that dismissal were moot. LUPA I, 149 Wn. App. at 467-68. The court further concluded that Spice's appeal was frivolous and awarded fees to Pierce County and the City. Id. at 468. The Washington Supreme Court granted review of this ruling but the parties settled before oral argument when the City agreed to forgo the fee award.

On December 8, 2009, while the LUPA II case was still on hold, Mathews died. Shortly after her death, Spice recorded several quitclaim deeds granting him title to several of Mathews' properties, including the remaining interest in the Property. Spice informed Lake of Mathews' passing but told her the Property was

in his name and he did not want Mathews' estate to be involved. Lake told Spice that nothing needed to be done if the Property was in Spice's name and she did not inform the court of Mathews' death.

Shortly thereafter, Spice became involved in litigation with Mathews' only living child, Donna DuBois, the personal representative of Mathews' estate. DuBois and Spice had a contentious relationship and, according to Spice, DuBois refused to cooperate with him and frustrated his attempts to obtain financing and develop the Property. Spice filed a creditor's claim in Mathews' probate, leading DuBois to assert that the Mathews Estate owned the Property and several other properties then held in Spice's name. Spice initiated a lawsuit against DuBois to quiet title in the properties. DuBois filed counterclaims against Spice, alleging fraud, undue influence, negligence, and breach of fiduciary duties. While this litigation was ongoing, Spice could not develop the Property because DuBois had filed a lis pendens on the Property and obtained a restraining order preventing Spice from conveying any interest in the Property.

In September 2012, a jury found that Spice owned only 25 percent of the Property and that Mathews' estate owned the remainder. Spice then filed a second lawsuit against DuBois, claiming, among other things, that she was committing waste on the Property.

Meanwhile, Spice's LUPA II petition remained dormant for years pending the outcome of Stanzel's case. According to Lake, when Stanzel settled in 2011, Spice did not want to move forward on his own claims until his and DuBois' rights to the Property were resolved. Then, shortly after it was determined that he owned

only 25 percent of the Property, one of Spice's attorneys in the DuBois litigation filed a notice of appearance as Lake's co-counsel in his LUPA II proceeding. In February 2013, that attorney moved to set Spice's damages claims for trial. By that time, however, his LUPA II petition had been rendered moot by changes to the Puyallup City Code and the removal of the Pierce County Hearing Examiner's authority to hear water service disputes.

In June 2013, the trial court dismissed Spice's damages claims based on a failure to exhaust administrative remedies. The court also awarded $132,790.65 in fees against Spice, Mathews, and Plexus. Lake filed a notice of appeal on Spice's behalf, in which she informed the court for the first time that Mathews had passed away. In June 2014, Division Two remanded for the trial court to determine the effect of Mathews' death on judgments it had entered against her.

In April 2016, the trial court found that the Mathews Estate was a necessary party to the LUPA II proceeding and voided its prior rulings. It further concluded it did not have the authority to compel the Estate to be a party and dismissed the case when DuBois refused to join it. The trial court awarded $45,000 in CR 11 sanctions against Lake for her failure to notify the court or opposing counsel of Mathews' death, and awarded $132,790.65 in fees against Spice. Division Two later affirmed the trial court's decisions. Spice v. Pierce County, No. 45476-9-II, noted at 6 Wn. App. 2d 1026 (2018) (Wash. Ct. App. Nov. 28, 2018) (unpublished).[5]

---

[5] https://www.courts.wa.gov/opinions/pdf/D2%2045476-9-II%20Unpublished%20Opinion.pdf.

In the interim, DuBois filed for bankruptcy and, in 2017, the Mathews Estate's interest in the Property was transferred to DuBois and became an asset of her bankruptcy estate.[6] The bankruptcy court ordered the Property to be sold and Spice received 25 percent of the sale proceeds.[7]

In May 2020, Spice filed a complaint against Lake and the Goodstein Law Group PLLC, alleging legal malpractice and breach of fiduciary duty. Lake responded with a counterclaim for unpaid legal fees.

Lake moved for the summary judgment dismissal of Spice's legal malpractice claim. In February 2021, the trial court granted the motion, concluding that no genuine issue of material fact remained as to whether Lake's negligence had proximately caused Spice damage.

Lake also moved for summary judgment on her fee counterclaim and requested a total of $255,995.96 in unpaid fees and $118,031.53 in interest.[8] Lake testified that Spice had paid her approximately $40,000 for her legal services until August 2008 when he stopped paying her bills. Spice opposed the motion, contending that he and Lake had previously reached an understanding that he would only make payments when he could while the litigation was pending and that the bulk of her fees had only resulted from Lake's mishandling of the case.

---

[6] When the bankruptcy trustee filed a complaint against Spice in an effort to sell those properties in which he and DuBois both had an interest, Spice filed a number of counterclaims against the trustee alleging, among other things, conversion, tortious interference with existing business contracts and relationships, and embezzlement of Mathews' property. Spice was unsuccessful in these endeavors.

[7] Spice then became involved in litigation with the buyer because Spice refused to remove several mobile homes from the Property. Spice was again unsuccessful and the court ordered him to remove his property.

[8] Lake withdrew any claim for legal fees incurred in appealing the dismissal with prejudice of the LUPA I petition.

The trial court denied Lake's motion on her fee counterclaim, certified its summary judgment order dismissing Spice's claims as a final judgment, and stayed further proceedings pending this appeal.

Spice appeals.[9]

### ANALYSIS

Spice raises two issues on appeal. First, he argues he submitted sufficient evidence of legal malpractice to survive summary judgment. Second, he maintains the trial court abused its discretion in imposing discovery sanctions for his failure to respond to Lake's written discovery requests.

### Standard of Review

This court reviews a summary judgment order de novo. Loeffelholz v. Univ. of Wash., 175 Wn.2d 264, 271, 285 P.3d 854 (2012). A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). When determining whether a genuine issue of material fact exists, we consider all the evidence in the light most favorable to the nonmoving party. Vargas v. Inland Wash., LLC, 194 Wn.2d 720, 728, 452 P.3d 1205 (2019). A material fact is one upon which the outcome of the litigation depends, either in whole or in part. VersusLaw, Inc. v. Stoel Rives,

---

[9] Spice's complaint against Lake included claims for both legal malpractice and breach of fiduciary duty. The trial court found that Spice "failed to prove that a genuine issue of material fact exists on all elements of their claims" and dismissed the claims on summary judgment. Spice does not appeal the dismissal of his claim for breach of fiduciary duty.

LLP, 127 Wn. App. 309, 319, 111 P.3d 866 (2005). The court should grant summary judgment when reasonable minds could reach only one conclusion. Id.

If the defendant moves for summary judgment and shows "an absence of evidence to support the plaintiff's case," then the burden shifts to the plaintiff "to set forth specific facts that rebut the moving party's contentions and show a genuine issue of material fact." Zonnebloem, LLC v. Blue Bay Holdings, LLC, 200 Wn. App. 178, 183, 401 P.3d 468 (2017). The plaintiff "'may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value.'" Martin v. Gonzaga Univ., 191 Wn.2d 712, 722, 425 P.3d 837 (2018) (quoting Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986)). And they must offer more than conclusory statements. SentinelC3, Inc. v. Hunt, 181 Wn.2d 127, 140, 331 P.3d 40 (2014).

The court reviews an award of attorney fees as a discovery sanction under CR 37 for an abuse of discretion. Dalsing v. Pierce County, 190 Wn. App. 251, 267, 357 P.3d 80 (2015). A trial court has broad discretion to award attorney fees and we do not disturb that award absent a clear showing that the court abused its discretion. Id. A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds. Id. at 261.

Spice's Legal Malpractice Claim

Spice first contends the trial court erred in concluding there were no genuine issues of material fact on his legal malpractice claim against Lake. We disagree.

To establish a claim for legal malpractice, a plaintiff must show (1) the existence of an attorney-client relationship, which gives rise to a duty of care (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred. Schmidt v. Coogan, 181 Wn.2d 661, 665, 335 P.3d 424 (2014); Hizey v. Carpenter, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992).

It is uncontested that Lake represented Spice and that their attorney-client relationship gave rise to a duty of care. Thus, we address only the three remaining elements.

A.    Breach

Spice contends that the testimony of his expert, attorney J. Richard Aramburu, establishes that Lake breached the standard of care. Lake, by contrast, argues Aramburu's opinions are too conclusory to establish a question of fact under the attorney judgment rule. We agree with Spice on this issue.

To breach the duty of care, an attorney "must fail to exercise 'the degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law'" in Washington. Geer v. Tonnon, 137 Wn. App. 838, 850-51, 155 P.3d 163 (2007) (quoting Hizey, 119 Wn.2d at 261). Under the attorney judgment rule

> an attorney cannot be liable for making an allegedly erroneous decision involving honest, good faith judgment if (1) that decision was within the range of reasonable alternatives from the perspective of a reasonable, careful and prudent attorney in Washington; and (2) in making that judgment decision the attorney exercised reasonable care.

<u>Clark County Fire Dist. No. 5 v. Bullivant Houser Bailey P.C.</u>, 180 Wn. App. 689, 704, 324 P.3d 743 (2014).[10] "Merely providing an expert opinion that the judgment decision was erroneous or that the attorney should have made a different decision is not enough; the expert must do more than simply disagree with the attorney's decision." <u>Id.</u> at 706.

Aramburu, a land use practitioner who represented Stanzel in his parallel litigation against the City, opined that Lake breached the standard of care in three ways. First, he testified she breached the standard of care in withdrawing the LUPA I petition, a step that resulted in the dismissal of that case with prejudice. Second, he stated she erred in failing to inform the court that Mathews, one of her clients and a co-owner of the Property, had died. And third, he opined that her legal representation was "counter-productive and ineffective," when she put the LUPA II case on hold pending the outcome of the Stanzel case, an action that resulted in the dismissal with prejudice of the LUPA II case. Aramburu acknowledged that Lake had explained her strategy and reasoning to Spice but detailed why her actions fell short of the standard of care. Aramburu further testified that the outcome of the Stanzel case represented the "potential outcomes" Lake could have achieved for Spice had she acted "consistent with the applicable standard of care."

_____

[10] Spice and Plexus contend that Lake waived the application of the attorney judgment rule here when she failed to plead it in her answer to his complaint. While Washington courts have referred to the attorney judgment rule as an affirmative defense, <u>see</u> <u>Spencer v. Badgley Mullins Turner, PLLC</u>, 6 Wn. App. 2d 762, 796, 432 P.3d 821 (2018), Spice and Plexus cite no authority suggesting that the failure to plead it in the answer amounts to waiver of the rule. Moreover, the attorney judgment rule was raised in summary judgment pleadings, argued by both parties, and applied by the trial court without objection below. We reject the contention that Lake waived this defense and we apply the rule here.

We agree with Spice that Aramburu's declaration establishes a question of fact as to whether Lake breached the standard of care in her representation of Spice. While Lake did testify regarding the strategy and judgment underpinning her actions, Aramburu's declaration raises the question of whether these actions were within the range of reasonable alternatives from the perspective of a reasonable, careful, and prudent attorney in Washington.

Lake testified that she did not prosecute the LUPA I petition because she was focused on settling the case non-judicially. She testified that she eventually recommended dismissal of that petition while they brought the issue back before the hearing examiner because it would allow the matter to proceed on a more robust record and prevent the City from arguing that Spice had not exhausted his administrative remedies. She also felt it was a less expensive alternative to asking the court to stay the petition. But Aramburu opined that this decision was unreasonable because adherence to strict procedural rules of a LUPA appeal is "critical" to the success of a LUPA petition. Aramburu similarly stated that Lake's decision to put the LUPA II petition on hold until the Stanzel case was concluded was "inexplicable" given the statutory deadlines contained within LUPA. He explained that a failure to follow these procedures resulted in the loss of her clients' substantive rights.

Lake further testified that she did not believe she was required to inform the court of Mathews' passing. But Aramburu testified that the standard of care required her to inform the court, both because a property owner must be a party to

a LUPA petition under Washington law and because a lawyer has a duty to inform the court if their client dies.

Contrary to Lake's assertions, Aramburu's opinions are not merely conclusory statements. Instead, he identifies specifically which actions were deficient and further explains why, under Washington law, those decisions fell below the standard of care. Viewing this evidence in the light most favorable to Spice, we conclude that Spice has established that there are genuine issues of material fact regarding whether Lake breached the standard of care.

B. Proximate Cause of Spice's Alleged Damages

Spice contends that he presented sufficient evidence to create a genuine question of material fact regarding whether Lake's purported negligence caused him the damages he seeks. We disagree with this contention.

The measure of damages for legal malpractice is the amount of loss actually sustained as a proximate result of the attorney's conduct. Bishop v. Jefferson Title Co., Inc., 107 Wn. App. 833, 848, 28 P.3d 802 (2001) (quoting Matson v. Weidenkopf, 101 Wn. App. 472, 484, 3 P.3d 805 (2000)). "Although the precise amount of damages need not be shown, damages must be supported by competent evidence in the record. To be competent, the evidence or proof of damages must be established by a reasonable basis and it must not subject the trier of fact to mere speculation or conjecture." ESCA Corp. v. KPMG Peat Marwick, 86 Wn. App. 628, 639, 939 P.2d 1228 (1997).

General principles of causation are no different in a legal malpractice action than in an ordinary negligence case. VersusLaw, 127 Wn. App. at 328. Proximate

causation has two elements, cause in fact and legal causation. Fabrique v. Choice Hotels Int'l, Inc., 144 Wn. App. 675, 683, 183 P.3d 1118 (2008). Cause in fact refers to the "but for" consequences of an act, or the physical connection between an act and the resulting injury. Id. In a legal malpractice case, the first question is whether the client's case was lost or compromised by the attorney's alleged negligence. Spencer v. Badgley Mullins Turner, PLLC, 6 Wn. App. 2d 762, 777, 432 P.3d 821 (2018). The second question is whether the client would have fared better but for the attorney's mishandling of the claim. Id. Both elements must be satisfied. Id. Proximate cause may be determined as a matter of law when reasonable minds could reach but one conclusion. Kim v. Budget Rent A Car Sys., Inc., 143 Wn.2d 190, 203, 15 P.3d 1283 (2001).

In discovery, Spice claimed he had sustained the following damages: (1) the loss of the Property based on a claim of 100 percent ownership, (2) the lost revenue stream and profits that he claims he would have earned had the Property been developed according to his plans;[11] (3) a partial judgment of $55,000 leading to the loss of Spice's properties located at 11319 58th Street Court East, in Puyallup, a house valued by Spice at $400,000, and acreage he owned in Kitsap County with a claimed value of $800,000;[12] and (4) attorney fees and litigation expenses related to Spice's litigation with the City, the Mathews Estate and

---

[11] Spice claims between $20,340,000 and $25,000,000 as the combined value of the lost value of real estate and lost profits.

[12] According to a set of findings of fact and conclusions of law entered after a trial in Spice v. Estate of Mathews, No. 10-4-00037-5, Spice and the Mathews Estate each owned a 50 percent interest in approximately 118 acres in Kitsap County, and Spice owned a one-third share and the Estate owned a two-thirds share of property located at 11305 58th Street Court East in Puyallup. We can find no evidence of a $55,000 judgment against Spice or evidence regarding Spice's alleged loss of his interest in these parcels.

DuBois; the legal fees of $2.4 million that he claims he incurred to retain other attorneys to mitigate Lake's alleged negligence; and the legal fees and costs Spice paid Lake or owes to her for her representation in both LUPA petitions.[13] We address each claim for damages in turn.

1.  Lost Property Value

Spice alleges that Lake's failure to obtain a water availability letter from the City before Mathews died led him to lose the Property. Spice has not presented sufficient admissible evidence to create a question of fact as to how Lake caused this claimed loss.

First, there is no evidence that Spice held a 100 percent ownership interest in the Property. Spice alleged below that "the Dec. 2017 and Oct. 15, 2019 State Div. II Appeals Court Opinions transform[ed the] Estate of Doris Mathews['] Interest into 100% Spice's interest." Those opinions do not support any such proposition. Spice never challenged the jury's factual finding that he held only a 25 percent interest in the Property. See Spice v. DuBois, No. 44101-2-II, noted at 192 Wn. App. 1054 (2016) (unpublished)[14] (appeal following the jury's determination of property ownership in which Spice does not challenge the factual finding of his ownership). Spice and DuBois twice returned to the court of appeals and neither case addressed the jury's ownership distribution of the Property. See Spice v. Estate of Mathews, No. 48458-7-II, noted at 1 Wn. App. 2d 1040 (2017)

---

[13] During a deposition, Spice testified that he was further seeking $20 million in contempt sanctions that he claims he should have recovered from DuBois. However, he did not address this element of alleged damages in response to Lake's summary judgment motion below and does not address it on appeal. Therefore, Spice has abandoned those claims. Holder v. City of Vancouver, 136 Wn. App. 104, 107, 147 P.3d 641 (2006) (party abandons an issue by failing to brief the issue on appeal).

[14] https://www.courts.wa.gov/opinions/pdf/D2%2044101-2-II%20Unpublished%20Opinion.pdf.

(unpublished)[15] (appeal arising out of Spice's 2011 complaint against DuBois); Spice v. Estate of Mathews, No. 50915-6-II, noted at 10 Wn. App. 2d 1043 (2019) (unpublished)[16] (appeal arising out of Spice's 2017 complaint against Mathews Estate).  The jury's verdict against Spice is binding here; he held only a 25 percent interest in the Property.

Second, we can find no evidence that Lake caused Spice to lose his 25 percent interest in the Property.  The undisputed evidence indicates he lost his interest in the Property because a bankruptcy court ordered it to be sold.  According to the bankruptcy pleadings, that court held a trial in May 2019 to adjudicate the bankruptcy trustee's claim under 11 U.S.C. §363(f) to sell the Property over Spice's objection.  That court found that partitioning the Property was impracticable and the benefit of a court-ordered sale to DuBois's bankruptcy estate outweighed any detriment to Spice.  The trustee subsequently reported to the court that it sold the Property to an entity named Milwaukee Avenue, LLC on July 31, 2019.  Spice received $124,769 as his share of the sale proceeds.  The United States Bankruptcy Appellate Panel of the Ninth Circuit dismissed Spice's appeal as moot in September 2019.

Aramburu provides no expert opinions to link the loss of this Property to anything Lake did or failed to do.  Although Spice, on appeal, claims that Lake's failure to force the City to issue a water availability letter before Mathews passed away somehow caused him to lose the Property, any causal link between the sale of the Property and the delay in obtaining a water availability letter for the Property

---

[15] https://www.courts.wa.gov/opinions/pdf/D2%2048458-7-II%20Unpublished%20Opinion.pdf.
[16] https://www.courts.wa.gov/opinions/pdf/D2%2050915-6-II%20Unpublished%20Opinion.pdf.

is entirely speculative. There is simply no evidence in the record to suggest that DuBois would have allowed Spice to develop the Property, would not have become embroiled in litigation with Spice, would not have filed for bankruptcy, and would not have been forced to sell the Property to pay her debts, had Lake been successful in obtaining a water availability letter from the City in 2009.

Spice failed to create an issue of fact that Lake caused this claimed damage.

### 2. Lost Profits

Next, Spice seeks to recover lost profits from his planned development of the Property. A party seeking lost profits as damages must show that they would have earned the claimed profits, but for the defendant's breach. Tacoma Auto Mall, Inc. v. Nissan North America, Inc., 169 Wn. App. 111, 135, 279 P.3d 487 (2012). Spice failed to make this showing with admissible evidence.

In opposition to Lake's summary judgment motion, Spice submitted a number of documents which he testified demonstrated that his lost profit "damages are extensive." Spice testified that "Plexus Investments had real plans to develop the 11003 Property." He stated that had Lake obtained an order allowing him to obtain a water certificate before Doris Mathews died, he would have obtained financing to "transform my project to a tri-level storage facility with retail facilities for increased revenue and profitability to attract investors." He relied on a "profitability analysis," for a planned "Milwaukee Business Park," prepared by Coldwell Banker in 2010, a letter from Elite Tax and Financial Service LLC setting out the results of a forensic accounting "and monthly profit and losses statements

on Mathews Investment, Plexus Investment, Ted Spice, Donna-Mark-Danielle DuBois Bank Records and other financials from Aug. 2003 thru Oct 2012," and an unexplained and unlabeled spreadsheet.

These documents contain hearsay, which Spice conceded below, and are therefore inadmissible. See ER 801, 802. A court cannot consider inadmissible evidence when ruling on a motion for summary judgment. Dunlap v. Wayne, 105 Wn.2d 529, 535, 716 P.2d 842 (1986). Spice did not submit declarations from any of the authors of these analyses or explain how they came to their conclusions.

Moreover, Spice does not explain how any lost revenue from a development that never occurred and on property he did not own is anything but speculation. Despite Spice's assertions to the contrary, no reasonable juror could conclude that, but for Lake's malpractice, the City would have provided a water availability letter and he would have been able to develop the Property before Mathews died in late 2009.

Even after Stanzel received a favorable ruling at the court of appeals in June 2009,[17] the City continued to challenge his entitlement to water and Stanzel did not receive a water availability letter until 2011.[18] The City did eventually amend the Puyallup city code to remove the annexation requirement as a pre-condition to

---

[17] Spice argues that "Stanzel was able to obtain the preliminary outcome Plexus needed to expand its business plan" in April 2008. But Stanzel obtained that ruling from the trial court—the same court that reached the opposite legal conclusion in Spice's case. There is nothing suggesting that the trial court's legal conclusion was related to the malpractice alleged here.

[18] While Stanzel's LUPA appeal was pending in 2008, the parties returned to the hearing examiner, who ordered the City to provide the water availability letter. The City filed a LUPA petition related to that decision, but the petition was dismissed under the doctrine of res judicata. The City appealed that dismissal, which Division Two reversed and remanded in 2010. City of Puyallup v. Stanzel, No. 38857-0-II, noted at 157 Wn. App. 1014 (2010). Meanwhile, the City had also petitioned for review of the 2009 Division Two decision but that petition was denied on March 05, 2010. Stanzel v. Pierce County, 168 Wn.2d 1018, 227 P.3d 852 (2010).

providing water service, but it did not do so until July of 2011. This occurred long after DuBois became the personal representative of the Mathews Estate and filed a lis pendens against the Property, which Spice admitted hindered his ability to develop the Property. Thus, even if Lake had obtained a water availability letter from the City in June 2009, before Mathews died in December 2009, he would have been unable to develop the Property for reasons entirely unrelated to Lake's representation.

Spice has not presented admissible evidence to support his claim to damages for any lost profits.

### 3. Spice's Lost Properties

Although not altogether clear, Spice seems to claim he lost parcels of land other than the Property as a result of the entry of a $55,000 judgment against him. But other than a cryptic interrogatory response to Lake's discovery requests, we can find no evidence in the record below explaining this judgment, the basis for it, or how its entry is even remotely attributable to Lake.

### 4. Attorney Fees and Litigation Expenses

Spice contends he is entitled to recover, as damages, attorney fees and litigation expenses he was ordered to pay third parties or that he personally incurred over the past fifteen years.[19] He has advanced three separate arguments for why he is entitled to recover these fees and expenses from Lake.

---

[19] In discovery, Spice identified "[a]ttorney [f]ees and litigation expenses in the matters listed in Interrogatory no. 4." Interrogatory No. 4 identified Spice v. DuBois, Pierce County Superior Court Case No. 10-2-11622-8, Spice v. Pierce County, Pierce County Superior Court Case No. 06-2-04949-2, Spice v. Pierce County, Pierce County Superior Court Case No. 07-2-11636-0, and In Re DuBois, Bankr. W.D. Wash. No. 13-46104-BDL.

First, Spice contends he may recover legal fees he was ordered to pay third parties as a result of Lake's malpractice. Second, Spice argues he is entitled to recover the legal fees he incurred in retaining attorneys to represent him to mitigate Lake's malpractice. Third, he maintains that he may recover the legal fees he paid Lake directly for her incompetent legal services, in effect, a disgorgement of fees he paid to her.

Lake contends that the "ABC Rule" precludes Spice's recovery of any of these legal fees as compensatory damages in a malpractice action. We agree with Lake in part.

In general, "attorney fees are not available as <u>costs or damages</u> absent a contract, statute, or recognized ground in equity." <u>LK Operating, LLC v. Collection Grp., LLC</u>, 181 Wn.2d 117, 123, 330 P.3d 190 (2014) (quoting <u>City of Seattle v. McCready</u>, 131 Wn.2d 266, 275, 931 P.2d 156 (1997)). Equitable indemnity, also known as the "ABC Rule," is an equitable doctrine under which attorney fees are compensable as consequential damages in certain limited situations. <u>Id.</u> The ABC Rule has three elements, which we have modified to fit the legal malpractice context: (1) a wrongful act or omission by the attorney toward that attorney's client; (2) the malpractice exposes or involves the client in litigation with a third party; and (3) the third party was not connected with the initial malpractice. <u>Id.</u> Appellate review of a summary judgment decision based on the ABC Rule is de novo. <u>Id.</u>

Lake relies on <u>LK Operating</u> to argue that all of the attorney fees Spice seeks to recover as compensatory damages are barred as a matter of law under the ABC Rule. We disagree with Lake's reading of that case. In <u>LK Operating</u>, a

law firm represented two limited liability companies, LKO and TCG, in the development of a joint venture agreement. 181 Wn.2d at 120. When a dispute later arose between the parties to the joint venture, LKO initiated a lawsuit against TCG. Id. at 121. In turn, TCG sued the law firm for malpractice and sought, as damages, legal fees incurred in the contract dispute with LKO. Id. The Supreme Court held that TCG could not recover these fees as compensatory damages because LKO was inextricably linked with the alleged wrongful actions of the attorney and, as a result, TCG was unable to prove the third element of the ABC Rule as a matter of law. Id. at 124.

Unlike LK Operating, the litigation Spice initiated did not involve another client of Lake or her law firm. And there is no evidence that the City, the Mathews Estate, or DuBois was inextricably linked to the specific actions Aramburu identified as Lake's breach of the standard of care. Thus, while LK Operating sets out the general test, it does not stand for the proposition that legal fees are never recoverable as compensatory damages in a legal malpractice action.

We agree, however, that the ABC Rule bars Spice's recovery of legal fees a court ordered him to pay the City or Dubois because Spice failed to produce evidence to demonstrate that Lake's negligence was the sole reason he became involved in litigation with the City or DuBois.

In Tradewell Group, Inc. v. Mavis, 71 Wn. App. 120, 128, 857 P.2d 1053 (1993), this court held that a party may not recover attorney fees under the theory of equitable indemnity if, in addition to the wrongful act or omission of the defendant, there are other reasons why the plaintiff became involved in litigation

- 23 -

with the third party. In order to recover attorney fees as compensatory damages under the ABC Rule, the wrongful act must be the sole cause of the litigation between the plaintiff and a third party. Blueberry Place Homeowners Ass'n v. Northward Homes, Inc., 126 Wn. App. 352, 358-59, 110 P.3d 1145 (2005). "[E]ven if it is possible to apportion attorneys' fees related to a particular claim, where there are additional reasons why the party seeking fees was sued, fees are not available under the theory of equitable indemnity." Id. at 361.

Under Tradewell, Spice cannot recover any of the attorney fees he was ordered to pay the City after losing the two LUPA cases because the City abandoned its first fee award and Lake's alleged malpractice was not the sole reason the court imposed fees against Spice in the second appeal.

In LUPA I, although Division Two awarded attorney fees to Pierce County and the City of Puyallup, the parties entered a settlement agreement in which, in exchange for the voluntary dismissal of the appeal, Pierce County and the City agreed to forgo the fee and cost award. Spice had no liability for legal fees to the City in LUPA I.

In LUPA II, the trial court awarded attorney fees of $132,790.65 against Spice in favor of the City. Division Two affirmed this award on appeal. But Spice presented no evidence that Lake's alleged malpractice was the sole reason the court ordered Spice to pay the City's legal fees. The trial court dismissed LUPA II because it found DuBois to be a necessary party and she refused to join the case following Mathews' death. The court did not dismiss LUPA II because Lake failed to disclose Mathews' death or because she was dilatory in prosecuting that case;

- 24 -

it dismissed the case because DuBois independently decided she was unwilling to act as a party in that action. While Aramburu is critical of Lake for the manner in which she handled the LUPA appeals, he did not opine that Lake breached the standard of care in recommending that Spice pursue an appeal or that she breached the standard of care in relying on Spice's representation that the Estate need not be involved in the LUPA proceedings. This dismissal, and Spice's exposure to the City's legal fees, is thus unrelated to Lake's alleged negligence. Spice therefore failed to demonstrate a causal link between the attorney fees he owes to the City and Lake's mishandling of LUPA II.

Spice further contends that he is legally entitled to recover legal fees he has been ordered to pay DuBois in their litigation. We again disagree under Tradewell. Spice's litigation with DuBois started when he filed a creditor's claim in Mathews' probate, asserting rights under a promissory note that Mathews had signed before her death. DuBois then filed a lis pendens on the Property, and asserted that the Mathews Estate owned that parcel and several others then held in Spice's name. In response, Spice sued DuBois as personal representative for breach of the promissory note and to quiet title in those properties. Spice and DuBois brought multiple claims against each other and a jury eventually determined the respective property rights of each party with relation to each property. Following that determination, Spice filed a number of additional complaints against DuBois and the Mathews Estate regarding the management of properties they held jointly.

After several appeals, Spice finally went to trial on his remaining claims of waste and fraud against DuBois in October 2020. The trial court dismissed his

claims at trial, finding his claims "frivolous and advanced without reasonable cause." The court awarded DuBois $120,137 in attorney fees and costs under CR 11, RCW 11.96A.150, and RCW 4.24.630. The trial court's rulings and the award of attorney fees are now pending appeal.

But the outcome of that appeal is immaterial here. There is no evidence that any of Lake's actions identified by Aramburu as a breach of the standard of care exposed Spice to his lawsuits with DuBois. Spice instigated that litigation over a claimed entitlement under a promissory note that did not involve Lake in any way. DuBois asserted the Mathews Estate, rather than Spice, owned the Property. Many of the claims between Spice and DuBois were related to different properties they jointly owned, not just the Property that was the subject of Lake's representation. There is nothing to suggest that this lawsuit or any lawsuit that flowed from it had anything to do with Lake's mishandling of Spice's LUPA cases.

Spice argued below that the failure to acquire a water availability letter prior to Mathews' death in 2009 "poured gasoline on the fire and provoked litigation" between himself and DuBois. Even if Spice could demonstrate that his inability to develop the Property before Mathews died contributed to the DuBois litigation, he cannot recover under the ABC Rule unless Lake's actions were the only reason he became involved in litigation with DuBois. See Blueberry Place, 126 Wn. App. at 360-61 (B is not entitled to the fees and costs it incurred in litigation with C if, in addition to the wrongful act of A, there are independent reasons B became involved in litigation with C).

Spice failed to establish that Lake's alleged malpractice was the sole cause of the court orders requiring him to pay the City's or DuBois' legal fees, making them unrecoverable under the ABC Rule.

Next, Spice contends he is entitled to recover legal fees he paid to attorneys to mitigate the damage caused by Lake's alleged malpractice. His theory of recovery is not equitable indemnity but the general tort proposition that "an injured party is generally entitled to all legitimate and reasonable expenses necessarily incurred by him in a good faith effort to reduce the damages following the wrongful act." Kubista v. Romaine, 14 Wn. App. 58, 64, 538 P.2d 812 (1975), aff'd, 87 Wn.2d 62, 549 P.2d 491 (1976). Although Spice has not cited a Washington case supporting this element of recoverable damage in a legal malpractice action, a leading treatise has recognized that a client's injury may be the expense of retaining another attorney as an attempt to avoid or minimize the consequences of the first attorney's negligence. 3 RONALD E. MALLEN, LEGAL MALPRACTICE, § 21:12, at 27 (2021 ed.), cited with approval in Trask v. Butler, 123 Wn.2d 835, 872 P.2d 1080 (1994).

The problem with Spice's claim is not his legal entitlement but his lack of evidence to substantiate it. Aramburu identified three legal errors committed by Lake. Yet, neither he nor any other attorney testified that Spice paid any legal fees to other attorneys to cure the specific breaches Aramburu identified. Although Spice provided a list of some 19 attorneys and law firms he claimed he retained, he did not explain what actual legal services he received from any of these attorneys or how those services were necessary to mitigate losses caused by

Lake's supposed malpractice. He did not identify the amounts he paid to any of the individual attorneys or firms he listed in discovery and did not explain the legal services any of them provided to him. Thus, the record is insufficient to create a material issue of fact as to Spice's claimed mitigation fees.

Finally, Spice argues that he is entitled to recover fees he paid to Lake for the services that she performed incompetently as a form of consequential damages. We conclude that disgorgement of legal fees paid to an attorney is not an available remedy in a legal malpractice action.

In Eriks v. Denver, 118 Wn.2d 451, 462, 824 P.2d 1207 (1992), our Supreme Court held that when an attorney breaches an ethical duty to a client, disgorgement of fees is "a reasonable way to 'discipline specific breaches of professional responsibility, and to deter future misconduct of a similar type.'" (quoting In re Eastern Sugar Antitrust Litig., 697 F.2d 524, 533 (3rd Cir. 1982)). A finding of causation and damage is not required to support an order of disgorgement. Eriks, 118 Wn.2d at 462.

But a legal malpractice claim requires proof of both proximate cause and damage. Hizey v. Carpenter, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992); Nielson v. Eisenhower & Carlson, 100 Wn. App. 584, 589, 999 P.2d 42 (2000). And it is a claim arising in law, not in equity. Kelly v. Foster, 62 Wn. App. 150, 155, 813 P.2d 598 (1991). The cases allowing a client to seek the equitable remedy of disgorgement for ethical violations does not extend to legal claims of malpractice.

We conclude that the ABC Rule applies to Spice's claim for attorney fees he paid to the City and DuBois and he failed to produce evidence to establish that

Lake's actions were the only reason he became involved in litigation with either third party. We further conclude Spice failed to produce evidence to substantiate that he incurred legal fees to cure or mitigate damages he sustained as a result of Lake's alleged legal malpractice. And finally, we conclude Spice is not entitled to the disgorgement of legal fees he paid Lake as a remedy for this malpractice.

### Attorney Fee Award under CR 37

Spice argues the trial court abused its discretion when it imposed discovery sanctions and included attorney fees Lake incurred to prepare a motion to compel while the lawsuit was pending in another jurisdiction.

Spice initially filed this lawsuit in Pierce County Superior Court. While in that court, Lake filed a motion to compel discovery because Spice failed to answer interrogatories or to produce requested documents. The parties agreed to dismiss the case without prejudice and to refile it in King County Superior Court before the court resolved the pending discovery motion. The parties stipulated to "the dismissal of all claims by all parties herein, without prejudice, and without costs or attorney fees to any party."

After Spice refiled the lawsuit in King County Superior Court, and nine months had passed without discovery responses from Spice, Lake re-filed the same motion to compel discovery. The trial court granted this motion in part without any opposition by Spice. The trial court ordered Spice to "pay a portion of Defendants' reasonable fees and expenses incurred regarding this motion due to Plaintiffs' mostly unjustifiable failure to provide the requested discovery."[20]

---

[20] Spice does not appeal this order.

Lake then sought attorney fees and expenses in the amount of $13,085.98, only $2,022 of which had been incurred after Spice filed the case in King County Superior Court. Spice objected, arguing that Lake had waived any entitlement to fees while the case was pending in Pierce County Superior Court when she agreed to dismiss that case without either side receiving an award of attorney fees. Lake argued, in reply, that the stipulation to dismiss the case was without prejudice, preserving all claims or issues, and the agreement as to fees related only to those fees incurred in dismissing the lawsuit. The trial court awarded Lake the entire amount she requested. Spice paid $2,022 of the sanctions.

Spice raises two separate arguments in an attempt to overturn the discovery sanction. First, he contends the court lacked authority under CR 37 to include in a fee award those fees that were not incurred while the lawsuit was pending in that particular jurisdiction. Second, he argues Lake waived her claim to the fees she incurred litigating any issues in Pierce County Superior Court when she stipulated to the dismissal of that action without prejudice. We reject both arguments.

Spice first contends that the trial court erred in awarding legal fees Lake incurred in the lawsuit while it was pending in Pierce County Superior Court because CR 37(a) only authorizes the court to award fees incurred after the case was filed in King County Superior Court. The text of CR 37(a) does not support this contention. CR 37(a)(4) provides

> Award of Expenses of Motion. If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney fees, unless the court finds that the opposition to

- 30 -

the motion was substantially justified or that other circumstances make an award of expenses unjust.

The rule gives to the trial court the discretion to determine whether any expenses Lake incurred were reasonable in obtaining her order to compel.  The court is free to conclude that the time spent preparing the original motion was necessary even though the lawsuit was then pending in Pierce County Superior Court, because the same fees would have been incurred to prepare the motion had the case originally been filed in King County Superior Court.

Spice next argues that Lake waived the recovery of the fees incurred while the case was in Pierce County Superior Court when she stipulated to the dismissal of the case.  We conclude the trial court did not abuse its discretion in finding that Lake did not waive her right to seek attorney fees under CR 37(a)(4). The parties' agreement is explicit about what rights they reserved and those they waived.  Each party agreed to waive fees in conjunction with the dismissal of claims and counterclaims.  The parties each agreed to waive certain, explicitly identified objections and defenses, including jurisdiction, venue, and statute of limitations.  Finally, the parties agreed to waive the application of CR 41(a)(2) and CR 41(d) to the dismissal.  Nowhere in the agreement did the parties agree to waive fees that might be recoverable as a discovery sanction under CR 37.  The trial court had a tenable basis for finding that the parties did not intend to waive their right to discovery sanctions.

The trial court acted within its discretion in finding that fees incurred while the case was pending in Pierce County Superior Court related to the same discovery dispute were "reasonable expenses incurred in obtaining the order"

compelling discovery in King County Under CR 37(a)(4) and determining that Lake did not waive her right to seek these fees when she stipulated to transferring the case from Pierce County to King County Superior Court.

<u>Attorney Fees on Appeal</u>

Lake asks this court to award fees on appeal under CR 37. She contends that she is entitled to this award because she incurred legal fees to defend her fee award below. Although Lake cites no legal authority for her request, in <u>Magana v. Hyundai Motor America</u>, 167 Wn.2d 570, 593-94, 220 P.3d 191 (2009), the Supreme Court held that CR 37(d) authorizes an award of attorney fees for responding to an appeal of discovery sanctions. <u>See also</u> <u>Eugster v. City of Spokane</u>, 121 Wn. App. 799, 815, 91 P.3d 117 (2004) (attorney fees are recoverable for appeal of fee award under CR 37(a)(4)); <u>Dalsing</u>, 190 Wn. App. at 273 (same). We grant Lake's request but only as to those fees attributable to responding to the appeal of the discovery sanction.

We affirm.

Andrus, C.J.

WE CONCUR:

- 32 -